LATHROP and HUNTING *vs.* KNEELAND and TUELL, administrators, &c.

Where all the capital stock of a corporation is subscribed for and taken, at the time the articles of incorporation are filed, and the certificate of incorporation, made and filed as required by law, specifies the names of all the stockholders, no subsequent subscribers, by merely writing their names in the corporation book, and affixing a number of shares to their respective names, can acquire a right to any shares of stock, or become, by such an act, stockholders of the corporation, and liable as such for its debts.

When the stock in a corporation is once all taken, the corporation has no more at its disposal, unless it shall get back a portion of that so taken, by forfeiture; and no person can become a stockholder, except by purchase from one of the original subscribers, or his assignee, and by assignment of stock.

A corporation can not increase its capital stock at will, in any manner, or to any extent, unless it is authorized to increase the same, by its charter, and then only in the manner prescribed. *Per* JOHNSON, J.

Where, in an action by creditors of a corporation, against T., seeking to charge him with the debt, as being a stockholder of the corporation, it appeared from the evidence that all the capital stock was taken nearly two years before the subscription by T. was made; and there was no evidence of any forfeiture of any stock so taken originally, or of any transfer to T. of stock, or increase of capital; *Held* that there being no evidence to show that he ever held any stock, or that the right to any ever vested in him, the mere fact that he had subscribed for stock, in the book of the corporation, and given his note for the amount, was not sufficient to render him liable, as a stockholder, for the debts of the corporation.

*Held,* also, that T. was not *estopped* by the subscription of his name upon the corporation book, from denying that he was a stockholder.

THIS action was brought by the plaintiffs against the defendants, as administrators of Amasa Tuell, deceased, on a liability alleged to have been incurred by their intestate by reason of his being a stockholder in a mining corporation created by and under the laws of the state of Pennsylvania, called the "Geneva Coal Company." The cause was tried at the Yates circuit, in March, 1862, before his honor Justice WELLES, and a jury. The plaintiffs duly recovered a judgment against the Geneva Coal Company on the third day of November, 1857, in the court of common pleas of the county of Luzerne, for $5250.72, with interest since October 10, 1857, with $5.41 costs, for merchandise sold and delivered

to the company for the purpose of paying their miners, laborers, &c. and for merchandise furnished to the company. An execution was issued and returned unsatisfied. The Geneva Coal Company was incorporated under and in pursuance of the general act of 1849, of the state of Pennsylvania, entitled "An act to encourage manufacturing associations in this commonwealth," and the supplement thereto, passed April 7, 1853, and the further supplement thereto, passed in the year 1854, whereby it is provided that the stockholders incorporated in pursuance of the provisions of said act, shall be jointly and severally liable in their individual capacities, for debts due to miners, quarrymen and other laborers employed by such companies, and for machinery, provisions, merchandise, country produce and materials furnished for said companies respectively. This action is brought for the purpose of recovering the amount of the plaintiffs' claim for merchandise so furnished by the plaintiffs to the Geneva Coal Company, in pursuance of the provisions of said act. On the trial, the plaintiffs gave evidence tending to prove the above facts, and that the defendants' intestate was a stockholder in the company. At the close of the testimony the defendants' counsel asked the court to nonsuit the plaintiffs on the ground that there was no evidence that the intestate of the defendants, Amasa Tuell, was ever a stockholder of the Geneva Coal Company. That from the plaintiffs' own showing, all the stock allowed by statute to be taken or held by said company had been taken and subscribed for, and was held by stockholders, previous to the 27th January, 1857, and previous to the time when the plaintiffs offered to prove the intestate became a stockholder, and consequently the defendants' intestate could not take or hold any of the stock of said company, and was not and could not become a stockholder thereof. Second, that the plaintiffs had not proved that the Geneva Coal Company was ever a corporation duly organized or incorporated pursuant to the laws of the state of Pennsylvania. Third, that from all the facts proved, the

plaintiffs had not made out a cause of action against the
intestate or the defendants. Which motion the justice, be-
fore whom said trial was had, granted, in pursuance of the
motion of the defendants, and on the grounds asked for by
the defendants' said counsel, then and there nonsuited the
plaintiffs upon that ground; to which ruling, and decision of
the said justice, the plaintiffs' counsel excepted. The plain-
tiffs' counsel further excepted to the decision and ruling of
said justice, whereby he held and decided, as a conclusion
of law, that there was no evidence that Amasa Tuell was a
stockholder in said company. And the plaintiffs' counsel
further excepted to the decision and ruling of the said jus-
tice, whereby he refused to submit the said cause to the jury.

The exceptions were ordered to be heard in the first in-
stance, at a general term.

*John J. Van Allen*, for the plaintiffs.

*Charles S. Baker*, for the defendants.

E. DARWIN SMITH, J. The defendants' counsel moved for
a nonsuit, at the circuit, upon several grounds there specified,
and the circuit judge granted the motion, and directed a non-
suit without putting his decision upon either of the partic-
ular grounds mentioned. Upon the ground that the plaintiff
had not proved that the Geneva Coal Company was ever a
corporation duly organized or incorporated pursuant to the
laws of the state of Pennsylvania, I do not think the non-
suit can be sustained. The general acts authorizing the
formation of corporations for manufacturing purposes had
been, I think, substantially complied with in the organization
of the company. The company had an organized existence;
was a corporation *de facto;* was allowed by the authorities
of that state to exercise corporate franchises for several years;
and no steps were taken by the state to annul its charter or
deprive it of its assumed corporate rights. The act under

Lathrop *v.* Kneeland.

which the Geneva Coal Company became incorporated declared that the stockholders should be jointly and severally liable in their individual capacities, for debts due to miners, quarrymen and other laborers employed by such companies, and for machinery, provisions, merchandise, country produce and materials furnished for said company, respectively. The plaintiffs proved, I think, all the essential facts to entitle them to recover on this ground what they claimed under this act, if they had duly established that the defendant had been or was a stockholder of said coal company. In this, I think, the plaintiffs' proof entirely failed. The certificate of incorporation of said company, made and approved and filed as required by the statutes of that state, certifies that David P. Fuller, F. I. Smith, Daniel Evans, Samuel Benedict, Smith Sutherland and Philander Rexford desired and had agreed to form a company under the provisions of the general act of assembly of Pennsylvania, for mining of coal and other minerals, &c., and the said parties certify that the corporate name of said company shall be called the Geneva Coal Company ; that the capital stock of said company subscribed is $50,000, divided into 2500 shares of $20 each, of which one fourth had actually been paid in, and the names of the subscribers of the stock are as follows, viz. Daniel P. Fuller and Philander Rexford of the burgh of Pittston, Lucerne county, Penn., each twelve hundred and forty-six shares, F. I. Smith, David Evans, Smith Sutherland and Samuel Benedict, each two shares. The capital of $50,000 is thus fully subscribed by six persons, of whom the defendant is not one. Provision is made, in the 19th section of the original act, for increasing or diminishing the capital stock of every company organized under said act, but there is no proof that the capital stock of the Geneva Coal Company has ever been increased since its organization. This statute contemplated that all the corporators should subscribe the original articles of association or certificate of incorporation. Sections 1 and 2 of the general act provide for the filing and

recording of the original certificate in the office of the secre=
tary of the commonwealth, after it is subscribed as aforesaid,
and section 3 is as follows ; "When the certificate shall have
been recorded and filed as aforesaid, *the persons who shall
have signed and acknowledged the same,* and their succes-
sors; shall for the term agreed upon, not exceeding twenty
years from the filing of such certificate in the office of the
secretary aforesaid, be a body politic and corporate in fact
and in law, by the name stated in said certificate," &c. The
persons thus signing the original certificate constitute the
corporation and are the stockholders thereof. No provision
is made for taking in new stockholders, except the provision
for increasing the stock above mentioned, in section 19. No
person can become a stockholder in the corporation, as I can
see, except by purchase from one of the original subscribers
and by assignment of stock. The defendant is not proved to
have acquired any of the original stock by purchase or assign-
ment from either of the original stockholders, and he could
not become a stockholder in any other way, unless the capital
stock should be legally increased as provided for as above stated
in section 19 of the said act. Unless the defendant is a legal
stockholder in said company he can not, under said act, be in
any way made liable, as I can see, for any of the debts of the
said coal company. It is not claimed that he became liable
for said debt by any express contract, or upon any other
ground than as a stockholder in such company. He clearly
was not a stockholder, and the plaintiff was therefore prop-
erly nonsuited at the circuit. The motion for a new trial
should therefore be denied.

JOHNSON, J. It was for the plaintiffs to establish affirm-
atively the liability of the intestate. The answer denied
each and every allegation of the complaint, so that, in addi-
tion to the other necessary evidence, it devolved on the plain-
tiffs to show that the defendants' intestate was a stockholder
of the corporation which was primarily their debtor. For

this purpose they introduced the book of the corporation, in which the subscribers to the stock thereof had severally subscribed for the same. By this, and the other evidence, it was shown that the defendants' intestate had written his name in this book and put opposite to it fifty shares. This was preceded by a special memorandum that one half the amount was to be transferred to Charles C. Miller. This subscription was shown to have been made on the 27th of January, 1857, and that the intestate and Miller at the same time gave their note for $200, payable at ninety days thereafter, for the first two installments.

The principal place of business of the corporation was in Luzerne county, Pennsylvania, and from the testimony it appears that it commenced its business operations there in April, 1865. By the certificate of the organization of the company, which was filed in pursuance of the statute of Pennsylvania under which the company was organized, on the 13th of April, 1865, and which was also produced in evidence, it appears that the capital stock of the company was $50,000, divided into 2500 shares of $20 each, and that the whole number of shares had then been subscribed and taken, and one fourth of the whole amount actually paid in. There is nothing to show that any of these shares thus subscribed and taken and partly paid for had ever been forfeited, or in any way transferred, after they were originally taken. The whole stock having been subscribed for and taken, at the time the articles of incorporation were filed and the company became a legal being, it is manifest that subsequent subscribers, by merely writing their names in the corporation book, and affixing a number of shares to their respective names, could acquire no right to any shares of stock, or become by such an act stockholders of the corporation. There was then no stock left for them to take; and as they could get nothing, the subscription would be wholly nugatory. A person who subscribes regularly to the stock of a corporation becomes a stockholder in virtue of his subscription, and espe-

cially so after he has paid a portion of his subscription. This was expressly held in *Spear* v. *Crawford*, (14 *Wend.* 20.) In that case the subscriber had paid no portion of his subscription, nor had he done any act whatever as a stockholder, and yet the court held that he was a stockholder, and as such liable for the debts of the corporation to the amount of the stock subscribed for by him. When the stock is once all taken, the corporation has no more at its disposal, unless it shall get back a portion thus taken, by forfeiture. This it is not shown to have done, in the case before us. If it is taken, and none of it forfeited, the only way any person could afterwards acquire any shares, by any possibility, would be by transfer from some one holding stock as an original taker or as transferee. The corporation can not increase its capital stock at will, in any manner, or to any extent, unless it is authorized to increase by its charter, and then only in the manner prescribed. It is not shown or pretended that the corporation in question had increased its capital, and it will not be presumed to have done so. It appearing from the evidence that all the capital stock was taken nearly two years before the subscription by the intestate, and there being no evidence of any forfeiture of any stock so taken, or of any transfer to the intestate of any stock, it is not proved that he was a stockholder. There is no evidence to show that he ever held any stock, or that the right to any ever vested in him. The mere fact that he subscribed and gave his note, is nothing, after the stock had all been taken and the company had no stock which they could issue. It is contended on behalf of the plaintiffs, that the defendants are estopped by the subscription of their intestate's name upon the company books from denying that he was a stockholder. But the principle of estoppel does not apply, upon the facts established by the evidence here. It does not appear that the plaintiffs trusted the company at all on the faith of the intestate having owned stock, or that they knew his name was upon the books when they gave the credit. If the presump-

tion is to be indulged that they examined to see who were stockholders, they presumption is equally strong that they ascertainad that befere the date of his subscription the entire amount of stock had been taken, so that he could not obtain stock in that way. I am of the opinion, therefore, that the plaintiffs were properly nonsuited on that ground alone.

A new trial must therefore be denied.

WELLES, P. J. concurred.

New trial denied.