## N. C. HUGHES ET AL. v. E. R. CROOKER.

(Filed 16 September, 1908.)

1. **Contracts—Conditions Precedent—Parol Evidence.**

    When a promissory note is given in pursuance of the terms of a written contract, evidence can be introduced of a contemporaneous oral agreement, made as a part thereof, to the effect that the note and contract were executed and given upon a condition precedent to their validity, which has not been performed. This does not vary by parol the terms of the written instrument, but postpones its operation until the happening of the contingency.

2. **Same—Evidence, Sufficient.**

    When the defense, in a suit upon a written instrument, is made that it was agreed by plaintiffs' agent that the transaction was incomplete until the agent had done a certain specified service, evidence that the agent told defendant that he was absolutely safe, for the contract was not to be regarded as finished until he, the defendant, signed his satisfaction thereon, which was to be upon the performance of the condition, is sufficient upon the question as to whether the contract was made upon that condition.

3. **Contracts—Conditions Precedent, Breach of—Negotiable Instruments—Payment of Note—Measure of Damages.**

    A holder of a negotiable instrument who has violated his agreement with the maker by negotiating it without performing a condition precedent to its validity is liable to the maker in such sum as he may have lawfully been compelled to pay thereon to an innocent purchaser for value without notice.

ACTION tried before *O. H. Allen, J.,* and a jury, at December Term, 1907, of BEAUFORT.

This action is prosecuted by N. C. Hughes against defendant for the purpose of recovering the amount paid by him by reason of the wrongful and fraudulent negotiation of certain notes executed by him and delivered to defendant, as the plaintiffs allege, to be held until the performance of a collateral contract by defendant. The basis of the complaint, eliminating irrelevant matter, is: That defendant, as agent of a clothes washer company, of Lauderdale,

Miss., proposed to sell to the two sons of the plaintiff Hughes for the sum of $500 certain rights, within a prescribed territory, to sell and appoint subagents to sell the washing machines. Defendant, as an inducement to procure the plaintiff Hughes to sign notes for the purchase price and to secure the payment thereof by mortgage on his land, promised to train the sons in regard to making sales, etc., and that, until he had complied with his contract, and plaintiff or his sons signed a certain paper which defendant ex-. hibited to them at the time the notes were signed, the transaction was to be incomplete and open; that defendant failed and refused to comply with the contract in regard to training the plaintiff's sons, and, in violation of said contract, negotiated the plaintiff's notes to purchasers for value, without notice of the condition upon which they were to become binding upon plaintiff; that by reason of the conduct of defendant in the premises plaintiff was compelled to pay said notes to the purchaser, and was thereby endamaged to the amount of the notes. Defendant, by appropriate pleadings, denied so much of the complaint as was material to the alleged cause of action.

The following issues were, without objection, submitted to the jury:

1. "Did the defendant wrongfully and fraudulently negotiate the notes of the plaintiff N. C. Hughes, as alleged in the complaint?" Answer: "Yes."

2. "What amount, if anything, is the defendant indebted to plaintiff N. C. Hughes by reason thereof?" Answer: "Five hundred dollars."

A large number of exceptions were "lodged" in the progress of the trial, but many of them, involving the same questions, were not referred to in the brief. Those which are material to the decision of the appeal are referred to in the opinion. There was judgment for plaintiffs, and defendant appealed.

*Ward & Grimes* for plaintiffs.

*W. C. Rodman* for defendant.

CONNOR, J.  The exceptions to the admission of testimony are based upon the theory that the plaintiff is endeavoring to contradict the written contract.  This is a misapprehension.  The cause of action in no way draws into question the terms and provisions of the notes or the contract made between the sons of the plaintiff and the washer company.  The basis of plaintiff's complaint is that, collateral to the written or printed parts of the transaction and as an inducement to the signing of them, the defendant agreed that he would perform certain obligations in regard to training the purchasers in the handling and selling of the machines and right to act as agent, etc., and that until the plaintiff, or his sons, to whom the sale was made, should sign a paper, which he produced at the time, signifying that he had performed his obligation, the entire transaction was *in fieri,* or, in the language of the plaintiff, "unfinished until I signed my satisfaction."  That such collateral agreements are enforcible and may be proven by parol, notwithstanding the rule excluding parol evidence to contradict or vary the terms of a contract reduced to writing, has been frequently decided by this and other courts.  The latest case in which the principle was enforced is *Pratt v. Chaffin,* 136 N. C., 350.  Then the written order for certain goods was signed with a collateral parol agreement that it should not be binding until approved by one of the partners.  An action was brought to enforce payment for the goods, which were shipped, but not accepted.  The same objection was made to the introduction of evidence of the parol collateral agreement, as here.  We do not think it necessary to repeat what was said in that case or do more than refer to the authorities cited.  The language of *Shepherd, C. J.,* quoted from *Kelly v. Oliver,* 113 N. C., 442, so clearly and accurately states the principle upon which plaintiff's

case and the admissibility of his testimony rest that we could add nothing of value to it. He says: "This does not contradict the terms of the writing, but amounts to a collateral agreement postponing its legal operation until the happening of the contingency." *Aden v. Doub,* 146 N. C., 10. The testimony was clearly competent. The defendant, at the conclusion of the evidence, moved for judgment of nonsuit and, by several prayers for instruction, presented the contention that in no aspect of the evidence was plaintiff entitled to recover. We think that there is evidence competent to be considered by the jury to sustain plaintiff's allegation. He testified: "I can't say definitely whether or not he said he would not negotiate the notes, but I can say that he said I was absolutely safe, for the contract was not finished until I signed my satisfaction; that there was no finishing of the contract and that was my security. He said: 'This contract that we work under obliges every agent in engaging a subagent to promise him that before he will leave him he signs a contract saying he is satisfied. Now,' he says, 'that is your security,' and then he produces a written blank saying something, I don't remember what. He said he could not leave me; that the contract obliged him, before I sold five machines, because he was not allowed to do it, and then he says: 'I cannot leave you until you say that you are satisfied.' He showed at that time a blank paper to be signed when the work was done." There was much other testimony on the part of the plaintiff to the same effect. Defendant did not testify.

It was not denied that defendant negotiated the notes or that they were paid by plaintiff. His Honor instructed the jury in every phase of the case, putting his instructions in writing. The jury having found that the plaintiff's testimony was true, it was manifest that defendant was guilty of a breach of his contract in negotiating the notes before

he had trained the sons and plaintiff had signed the paper expressing his satisfaction. This was a condition precedent to the validity or closing of the transaction. Plaintiff was negligent in trusting the negotiable notes in the custody of defendant until he had complied with his agreement. He has paid for such negligence and is entitled to be reimbursed by the wrongdoer. While the mere breach of such a contract may not be a fraud, when, as in this case, under the charge of his Honor, the jury, upon considering the circumstances and conditions surrounding the transaction, find that the defendant did not intend at the time he made the contract to perform his promise, his conduct in negotiating the notes, being a nonresident, and taking the proceeds out of the State, justify the verdict of the jury. It is difficult to understand, in the light of the experience as shown by numerous decisions of this Court, why men will make such contracts. The only way, it seems, to protect them against their folly is to demand fair; open dealing on the part of nomadic salesmen of patent rights. There is but little substantial difference between plaintiff's case and many others in which overcredulous citizens, thinking that there were "millions in it," have found that the amount invested in the purchase of patent rights measured the extent of their loss. Eliminating the element of fraud, the allegations and proof are sufficient to sustain the verdict and judgment, upon the theory that the plaintiff had not, until the performance by the defendant of his obligation, come under an absolute liability to defendant. That defendant could not have recovered on the notes at the time he negotiated them is manifest. If by negotiating them he imposed an obligation on the plaintiff to the purchaser, it is equally manifest that he is liable for such amount as plaintiff was thereby required to pay. Any other conclusion would put a premium upon the violation of duty by defendant, to his enrichment and plaintiff's loss. Taking the

evidence to be true as found by the jury, there can be no doubt that a wrong has been done by the defendant to the plaintiff, for which the law will afford him a remedy. The case was fairly submitted to the jury by his Honor, and we find no error in the judgment based upon the verdict.

No Error.