T. M. THOMAS ET AL. v. CARTERET COUNTY ET AL.

(Filed 9 November, 1921.)

**1. Contracts—Writing—Conditions Precedent—Parol Evidence.**

Where a contract is reduced to writing to be held subject to the performance of a condition precedent by one of the parties, the existence of the contract depends upon the performance of the condition, and the failure of its performance may be shown by parol, as such does not tend to vary, alter, or contradict a written instrument.

**2. Same—Written in Part.**

The principle upon which the parol part of a contract may be shown in evidence, when the other part thereof has been reduced to writing, is inapplicable when the law requires a writing in relation to the subject-matter which is sought to be shown by parol.

**3. Contracts—Writing—Conditions Subsequent—Parol Evidence—Waiver —Mortgages — Deeds and Conveyances — Embezzlement— Criminal Law.**

Where the plaintiffs have made a note secured by a mortgage on their lands, given on condition that a pardon be unconditionally granted by the Governor to a relative who has embezzled county funds, and the pardon was delivered and the note and mortgage delivered to the proper county officials, and the plaintiffs in their action seek to show by parol as a condition precedent to the validity of the written instruments that the county should first collect from the bondsman of the defaulter, the allegation of a conditional delivery is waived by an admission of the plaintiffs on the trial that the defendant county was entitled to a judgment on their note and mortgage.

**4. Contracts— Writing— Admissions—Conditions Precedent—Parol Evidence.**

Where a valid delivery of a binding, written contract has been established, or admitted upon the trial, neither a condition subsequent nor a reservation or cotemporaneous trust in favor of the grantor resting in parol, may be shown, in direct contradiction to the written terms.

**5. Judgments—Statutes—Mortgages—Deeds and Conveyances—Sales— Confirmation of Sales—Courts—Appeal and Error.**

A judgment appointing commissioners to sell land under mortgage and apply the proceeds to the defalcation of a county official of county funds, which the mortgage was given to secure, will be modified on appeal to provide for a report and confirmation of the sale by the court, when this provision of the statute has not been incorporated therein.

STACY, J., not sitting; WALKER, J., dissenting.

APPEAL from *Horton, J.,* at June Term, 1921, of CARTERET.

Action to determine the extent of plaintiffs' liability on a certain note and mortgage, executed and delivered to Thomas Thomas, and by him given as security to the county of Carteret. A brief history of this litigation is set out in the judgment of the Superior Court, entered at the June Term, 1921:

"This cause coming on to be heard before J. Lloyd Horton, J., and a jury, and it appearing to the court that at the June Term, 1920, of said court, this cause had been tried before his Honor, Connor, J., and a jury, and at said term the following issues, with their answers, were submitted and found by the jury as follows, to wit:

"1. In what amount, if any, is Thomas Thomas, trustee of the courthouse bond sinking fund, indebted to Carteret County? Answer: '$13,-236.49, with interest.'

"2. What sum, if any, is Carteret County entitled to recover of the United States Fidelity & Guaranty Company as surety for Thomas Thomas, treasurer of Carteret County? Answer: 'Nothing.'

"3. What sum, if any, is Carteret County entitled to recover of W. A. Mace, administrator of Alonzo Thomas, deceased, on the bond of Thomas Thomas, trustee? Answer: '$5,000.'

"4. Were the note and mortgage of T. M. Thomas and wife, Laura, executed to Thomas Thomas and assigned to Carteret County, taken and accepted with the understanding and agreement that the same should be used only after the other securities, held by the county for Thomas Thomas, trustee, had been exhausted, as alleged in the complaint? Answer: 'No.'

"5. What sum, if any, is Carteret County entitled to recover of T. M. Thomas and wife on account of the note for $13,500 secured by mortgage assigned to said county by Thomas Thomas? Not answered.

And it further appearing to the court that the presiding judge of said court in his discretion set aside the answer to the fourth issue and failed to answer the fifth issue, which he instructed the jury the court would answer after they had answered the other issues, and permitted the plaintiffs to file a reply and further pleading upon which the following issues were submitted and answered at this, the June Term, 1921, of CARTERET, before his Honor, Horton, J., and a jury, as follows, to wit:

"4. In what amount, if any, is W. A. Mace, administrator, etc., of Alonzo Thomas, indebted to Carteret County on account of the term of said Alonzo Thomas as treasurer of Carteret County, beginning on the first Monday in December, 1914, and ending at the death of said Alonzo Thomas on 18 November, 1915? Answer: '$5,000, and interest.'

"5. What amount, if any, is Carteret County entitled to recover of defendant United States Fidelity & Guaranty Company as surety for said Alonzo Thomas as treasurer of Carteret County for said term, beginning on the first Monday in December, 1914? Answer: '$8,236.49, and interest.'

"6. Were the note and mortgage given to Thomas Thomas by plaintiff given as an accommodation paper to said Thomas Thomas, as alleged by plaintiffs? Answer: 'Yes.'

"7. Is the defendant, Carteret County, a holder for value as between it and the plaintiffs of the $13,500 note and mortgage made by plaintiffs? Answer: 'Yes.'

"8. Were the note and mortgage of plaintiffs executed to Thomas Thomas and assigned to Carteret County taken and accepted with the understanding and agreement that the same should be used by the county only after the bonds of said Thomas Thomas and of said Alonzo Thomas had been exhausted, as alleged by plaintiffs, and then applied to the balance unpaid due said county on account of the Thomas Thomas trusteeship of the sinking fund and the treasurership of said Alonzo Thomas? Answer: 'Yes.'

"9. What sum, if any, is Carteret County entitled to recover of plaintiffs on account of the note for $13,500, secured by mortgage assigned to said county by Thomas Thomas? Answer: '$13,234.49, with interest from 1 October, 1916, to be credited with $5,000 and interest on same from 13 June, 1921, due by the estate of Alonzo Thomas as surety for Thomas Thomas, trustee of the courthouse bond sinking fund,' the last issue having been answered by the court by consent of all parties that the court might answer same after verdict as a matter of law.

"It is now considered and adjudged by the court that the answers to the issues number 4 and 5 be, and are on motion of defendants, other than Carteret County, set aside as a matter of law for the reason that the jury found, at the June Term, 1920, by its answer to the first issue, that Thomas Thomas, trustee of the courthouse bond fund received and misappropriated the funds.

"It is further ordered and adjudged by the court that Carteret County recover nothing against United States Fidelity & Guaranty Company as surety, and that said defendant United States Fidelity & Guaranty Company go without day and recover its costs.

"It is further considered and adjudged by the court that Carteret County recover of W. A. Mace, administrator of the estate of Alonzo Thomas, deceased, the sum of $5,000, with interest from 13 June, 1921, as surety on the bond of Thomas Thomas, trustee of the courthouse bond sinking fund, said Mace, administrator, having tendered judgment for said amount in open court, said amount to be credited on the amount due Carteret County by T. M. Thomas and wife, Laura P. Thomas.

"It is further considered and adjudged by the court that Carteret County recover of T. M. Thomas and wife, Laura Thomas, the sum of $13,236.49, with interest from 1 October, 1916, at the rate of 6 per cent

per annum, to be credited with the sum of $5,000, and interest on same from 13 June, 1921, due by Mace, administrator of Alonzo Thomas, deceased, the said Alonzo Thomas having been surety on the bond of Thomas Thomas, trustee of the courthouse bond sinking fund.

"It is further considered and adjudged that the note and mortgage given by T. M. Thomas and wife, Laura P. Thomas, to Thomas Thomas, and assigned by Thomas Thomas to Carteret County, be foreclosed to pay said indebtedness, and that Luther Hamilton and Leslie Davis be, and are appointed commissioners to sell the lands described in the mortgage of T. M. Thomas and wife, Laura P. Thomas, to Thomas Thomas, recorded in the office of the register of deeds of Carteret County, in Book 22, page 339, after due advertisement and in accordance with the law governing sales of real estate under execution.

"It is ordered that such advertisement shall not be made until sixty days after the adjournment of this court, and then only in the event plaintiffs shall not have fully discharged the liability of this judgment.

"It is further adjudged that defendant Mace, administrator, pay the costs of the action, to be taxed by the clerk.

J. LLOYD HORTON, *Judge Presiding.*"

Upon the second trial the following admission was made in open court, and entered of record:

"Counsel for plaintiffs, having so admitted in open court, the court finds the following facts:

"In this case, the plaintiffs, T. M. Thomas and wife, Laura Thomas, agree that, pursuant to the issues found in the trial of this case before Hon. George W. Connor, judge, at the June Term, 1920, the defendant, Carteret County, is entitled to a judgment against the plaintiffs, T. M. Thomas and wife, Laura Thomas, in the sum of $13,236.49, with interest, said judgment to be credited for such amounts as had been or would be found by the jury in the case that the defendant Mace, administrator, and others are indebted to said Carteret County."

His Honor set aside the verdict on the 4th and 5th issues, as a matter of law, and rendered the judgment appearing above. Plaintiffs and defendant Mace, administrator, appealed.

*Ward & Ward, H. S. Ward, and Luther Hamilton for plaintiffs.*
*Julius F. Duncan for Mace, administrator.*
*D. L. Ward and J. F. Duncan for United States Fidelity & Guaranty Company.*
*No brief filed on behalf of Carteret County.*

CLARK, C. J. The case at bar has been tried twice in the Superior Court, and this is the second appeal here. Former opinion reported in 180 N. C., 109. It is doubtful if the allegations of the complaint and the wording of the 8th issue, by correct interpretation, amount to a charge and finding that plaintiff's note and mortgage were not intended to take effect absolutely and unconditionally at the time of their delivery. It was only upon the allegation of a conditional delivery that plaintiffs were permitted to show the "understanding and agreement" upon which the note and mortgage were "taken and accepted." Indeed, on the facts of the present record—the mortgage having been delivered to the mortgagee and by him in turn assigned to Carteret County—it is not altogether clear or certain that this position was ever open to the plaintiffs. *Buchanan v. Clark,* 164 N. C., 56; *Huddleston v. Hardy,* 164 N. C., 210; *Bond v. Wilson,* 129 N. C., 325; note: 16 L. R. A. (N. S.), 941. But as the point is not raised by any specific exception, we shall not pass upon it now. It is unnecessary for us to do so.

The principle applicable to a conditional delivery has been sanctioned and approved by us in a number of carefully considered decisions; and it is now very generally recognized in this and other jurisdictions. *Farrington v. McNeill,* 174 N. C., 420; *Bowser v. Tarry,* 156 N. C., 35; *Gaylord v. Gaylord,* 150 N. C., 222; *Hughes v. Crooker,* 148 N. C., 318; *Aden v. Doub,* 146 N. C., 10; *Pratt v. Chaffin,* 136 N. C., 350; *Kelly v. Oliver,* 113 N. C., 442, and *Ware v. Allen,* 128 U. S., 590. It is said in Anson on Contracts (Am. Ed.), 318: "The parties to a written contract may agree that until the happening of a condition, which is not put in writing, the contract is to remain inoperative." And again, in *Wilson v. Powers,* 131 Mass., 539: "The manual delivery of an instrument may always be proved to have been on a condition which has not been fulfilled, in order to avoid its effect. This is not to show any modification or alteration of the instrument, but that it never became operative and that its obligation never commenced." These excerpts are quoted with approval in *Garrison v. Machine Co.,* 159 N. C., 285, where the same doctrine is announced by *Walker, J.,* in an elaborate review of the authorities on the subject in hand.

We are of the opinion, however, that the admission, made in open court, to the effect that the defendant county was entitled to a judgment on the note and mortgage in question (though subject to certain credits), takes these instruments out of the class of conditionally delivered contracts, if, indeed, they were ever entitled to be styled as such. To admit their present validity and binding force for any purpose, in advance of the happening of the contingent event upon which it is alleged they were to take effect, is at variance with the theory of a conditional delivery, and brings into operation other principles of law.

"It is fully understood that although a written instrument purporting to be a definite contract has been signed and delivered, it may be shown by parol evidence that such delivery was on condition that the same was not to be operative as a contract until the happening of some contingent event, and this on the idea, not that a written contract could be contradicted or varied by parol, but that until the specified event occurred, the instrument did not become a binding agreement between the parties." *Bowser v. Tarry, supra.* The question is controlled very largely by the intention of the parties. *Waters v. Annuity Co.,* 144 N. C., 670. But plaintiffs have abandoned this position (if they were ever entitled to take it) by their admission in open court, for it is only upon the strength and validity of the note and mortgage that any judgment at all could be rendered against them and in favor of Carteret County.

A valid delivery and binding contract having once been established, or admitted, the plaintiffs may not thereafter be permitted to annex a condition subsequent, resting in parol, and in direct contradiction to the express terms of their written obligation, for this would infringe upon the well settled rule that oral evidence will not be admitted to vary or contradict the terms of a written instrument. *Mfg. Co. v. McCormick,* 175 N. C., 277, and cases there cited.

This doctrine was well stated by *Smith, C. J.,* in *Ray v. Blackwell,* 94 N. C., 10, as follows: "It is a rule too firmly established in the law of evidence to need a reference to authority in its support, that parol evidence will not be heard to contradict, add to, take from, or in any way vary the terms of a contract put in writing, and all contemporary declarations and understandings are incompetent for such purpose, for the reason that the parties, when they reduced their contract to writing, are presumed to have inserted in it all the provisions by which they intend to be bound," citing 1 Greenleaf Ev., sec. 76; *Etheridge v. Palin,* 72 N. C., 213. And to like effect are many decisions in our Reports, too numerous to be cited here.

In *Walker v. Venters,* 148 N. C., 388, it was said: "It is true that a contract may be partly in writing and partly oral (except when forbidden by the statute of frauds), and that in such cases the oral part of the agreement may be shown. But this is subject to the well established rule that a contemporaneous agreement shall not contradict that which is written. The written word abides, and is not to be set aside upon the slippery memory of man." See, also, *Moffitt v. Maness,* 102 N. C., 457, one of the leading cases on this subject, and *Sykes v. Everett,* 167 N. C., 600. This last citation contains an interesting and illuminating discussion of a kindred and closely allied subject which supports and is in full accord with our present decision.

*Kernodle v. Williams,* 153 N. C., 475, and others like it, have no application either to the law or the facts of this case. That case held: "Where a contract is not required to be in writing it may be partly written and partly oral, and in such cases, when the written contract is put in evidence it is admissible to prove the oral part of it." But the instrument here in question a conveyance of land, to be applied to the payment of the defalcation of public funds by the grantor's nephew, is required to be entirely in writing, and no oral agreement or private understanding can years afterwards be written into the contract in order to relieve the grantor of the responsibility he assumed and upon the execution of which he procured the release of his nephew.

In *Gaylord v. Gaylord,* 150 N. C., 222, the Court held that "the doctrine of engrafting an oral agreement upon a written instrument which is required by the statute of frauds for the conveyance of land cannot be established *in favor of the grantor* in the deed." That case has been very often cited since with approval. See citations thereto in Annotated Edition.

In *Campbell v. Sigmon,* 170 N. C., 351, the Court held: "If, notwithstanding the solemn recitals and covenants in a deed, the grantor could show a parol trust in himself it would virtually do away with the statute of frauds, and would be a most prolific source of fraud and litigation. No grantee could rely upon the covenants in his deed," citing, among other cases, *Gaylord v. Gaylord, supra.*

In *Walters v. Walters,* 172 N. C., 330, the same matter was fully discussed again, and it was held, "The grantor cannot set up a parol trust in his own favor against the grantee, saying the ruling in *Gaylord v. Gaylord,* 150 N. C., 222, that a parol trust cannot be set up by the grantor as to the conveyance in fee to his grantee, is not only upheld by the reasoning and authorities therein cited, but that case has since been upheld and reaffirmed in *Ricks v. Wilson,* 154 N. C., 289; *Jones v. Jones,* 164 N. C., 322; *Cavenaugh v. Jarman, ib.,* 375; *Trust Co. v. Sterchie,* 169 N. C., 22; *Campbell v. Sigmon,* 170 N. C., 351, and *Walters v. Walters* (when here before), 171 N. C., 313." In very recent cases, *Allen v. Gooding,* 173 N. C., 96, and *Chilton v. Smith,* 180 N. C., 472, *Gaylord v. Gaylord* has been again cited with approval. In the latter case the Court overruled a previous decision of this Court, *Fuller v. Jenkins,* 130 N. C., 554, which had mistakenly held that a deed absolute on its face could be converted into a mortgage because of an oral agreement between the parties at the time that it should operate as a mortgage, and said that it "stands alone and is expressly overruled."

If a negro or some poor white man is convicted of stealing a side of meat for his starving family the doors of the State's Prison usually lie

open before him, but Thomas Thomas, having been convicted of appropriating thousands of dollars entrusted to his care for safe keeping, and sentenced to the State Penitentiary, it was made to appear to the Governor of the State, who has the unrestricted power of pardon, that it was more advisable to secure the return of this money to the taxpayers of Carteret County than that the criminal should be punished, and upon assurance that by this instrument his uncle had insured the payment of this fund to the taxpayers the pardon was granted. That was the consideration for this deed and, according to the custom, this reason was given out to the world as the ground for the pardon. There is no provision in that deed that the grantor therein, who on the faith thereof procured the release of his nephew from the sentence of the law, should be "exempted from payment if some one else could be sued to recover the sum embezzled." There could be no oral agreement in favor of the grantor that notwithstanding, in fact, the public must collect the money, if they could, out of other people. On the written agreement that out of the land conveyed the county treasurer would be reimbursed, the pardon was given and the convict released. The State performed its part of the contract. The written agreement on the other hand was unequivocal that the property conveyed in the deed should be applied to reimburse the county and protect the people of the county from raising additional taxes to make good the loss their treasury had sustained by the defalcation. Upon the facts in the present record the mortgage was delivered to the mortgagee, and by him assigned to Carteret County in consideration of his pardon, and the conveyance was as unconditional as the pardon which he received.

The admission having been made in open court in this case, to the effect that the defendant county was entitled to a judgment on the note and mortgage in question, takes this instrument out of the class of conditional and conditionally delivered contracts, if indeed it had ever been entitled to be so styled. There was no reservation in the conveyance now sought to be set aside that it was "not to be valid if any one else could be sued for the money." It will not be charged by any one that the Governor in granting the pardon ever understood that this was a part of the instrument executed by the plaintiff. It was absolutely represented to him as an unconditional security to the county that the funds would be replaced by sale of the property conveyed, and in open court in this case it was admitted that the county was entitled to judgment on the note and mortgage.

Instead of that, these funds which were taken out of the public treasury eight to ten years ago are still withheld, and we are asked by the mortgagor to hold that there must be a long, weary chase taking the

time of the courts at great additional expense to the county to ascertain whether or not there was some private unwritten agreement with some one by which other people should first be sued to recover the money which the plaintiff contracted to pay, if his nephew were released.

The pardon was unconditional, based upon the security of this conveyance for the unconditional payment of the money. The property of the citizens of Carteret County may be advertised for the payment of the enhanced taxes caused by the defalcation, but the property pledged for the repayment of that sum is still unsold, and the only visible result so far has been the added cost of the courts in investigating the plea of an oral understanding that the property of the mortgagor is to be exempted from liability, if some one else can be found who can be sued. The public burdens are increased by protracted litigation in the metaphysical round of legal technicalities in the effort by learned counsel to

"*Distinguish and divide a hair between south and southwest side,*"

with the ultimate result possible that if any one ever pays anything there will be little, if any, of it that will get into the treasury for the benefit of the people who have lost it.

Applying these principles, his Honor might well have excluded all the evidence offered on the second trial and rendered judgment on the verdict as returned and left undisturbed at the June Term, 1920. But as the same result has been accomplished, though somewhat irregularly, by the judgment as entered, we have concluded to let it stand, as it is a matter of public interest to all the people of Carteret County that this litigation should be disposed of as speedily as possible. It is their money which has been misused and misappropriated, and embezzled; and, up to the present time, nothing has been refunded or paid back. The note and mortgage in question were given to make good this shortage and to save the county harmless from the defalcations of one of its officers. These transactions occurred in the year 1916. The plaintiffs' obligation matured on 7 February, 1917. Nothing further seems to have been done until this suit was instituted on 3 February, 1919, to require the commissioners to proceed with the collection of the prior securities in exoneration of plaintiffs' undertaking. Plaintiffs also allege that the county authorities have been negligent in this respect, and they have sought to be relieved from any further liability by reason of such delay and inaction. It would seem that this surreptitiously taken money, to say the least, should have been made good long ago. Public funds belong in the public treasury, and we are unable to find any warrant of law for such indulgences as are disclosed by the present record.

This opinion will be certified to the Superior Court of Carteret County, to the end that the judgment entered at the June Term, 1921,

may be modified so as to provide for a report and confirmation of the sale as required by statute; and, as thus amended and changed, the judgment will be

Modified and affirmed.

STACY, J., not sitting.

WALKER, J., dissenting: As much as I deprecate it, I am constrained to dissent from the opinion and impending judgment of this Court, as I think that upon the issues found by the jury (including the two numbers 4 and 5 of the second series of issues), which were set aside by *Horton, J.,* for error in law, and which should be reinstated, as there was no error in law or in fact, there should be a judgment against Mace, administrator of Alonzo Thomas, for $5,000, and against the United States Fidelity Company of Baltimore for $8,500, and only if there is any balance due after applying these sums as credits on the whole amount due the county, should there be any judgment against the county. A brief history of this case will demonstrate what a grave injustice we are about to inflict upon the plaintiffs, who have unquestionably the highest and strongest equity in this case as against all of the other parties.

The county of Carteret was about to lose a large sum of money ($13,500) by the defalcation of Thomas Thomas, as special agent of the courthouse fund, and as treasurer of the county, and also by the defalcation of Alonzo Thomas, as treasurer of the county. Alonzo was surety on the bond of Thomas Thomas, and hence the judgment against Mace, his administrator, and the United States Fidelity Company of Baltimore, was surety on the bond of Alonzo Thomas as treasurer of the county. When the debt to the county had been incurred by the said defalcation, the plaintiffs, Thomas M. Thomas and his wife executed their note with a mortgage, or deed of trust, on their land to secure it, and payable to Thomas Thomas for the purpose of having it deposited by him with the county to secure the debt he owed the county, with the contemporaneous understanding, and express stipulation, that the note and mortgage should not take effect until the county had exhausted the securities it already had for said debt, which securities consisted, at the time, of the bond of Thomas Thomas, on which Alonzo Thomas was security for $5,000, and the bond given by Alonzo Thomas himself as treasurer of the county, on which the United States Fidelity Company was surety for $12,000. No other securities were intended than those just mentioned. In other words, the county was required to exhaust the bonds of Thomas Thomas as agent and as treasurer, and that of Alonzo Thomas as treasurer, before the note and mortgage of the plaintiffs

handed to Thomas Thomas with the understanding that it should be deposited with the county, but upon the contingency that it should not become effective, or resorted to as security, for Thomas Thomas' defalcations of all kinds until other securities were first exhausted.

The authorities are very numerous to the effect that a note and mortgage, or contract, may be made to depend upon a contingency, or condition, and that it is a full defense to an action upon the note that the contingency has not happened or the condition not performed. It makes no difference what the contingency or condition is so that it is lawful and has some relation to the contract, or perhaps even if it does not, but is purely collateral. *Kelly v. Oliver,* 113 N. C., 442, which has often been approved as a good illustration of the principle. It is also held that such a contingency or condition stipulated for at the time of the execution of the contract, bond or deed, does not contradict or vary the terms of the latter, and is merely a contemporaneous agreement postponing its legal operation. It is said in *Kelly v. Oliver, supra,* to be competent for the defendant (plaintiffs here) to show that although he signed and delivered the instrument, it was not to go into effect, as to him (or them) until a certain condition was performed, and that this does not violate the rule as to contradicting or varying a writing, but has only the effect of a purely collateral undertaking postponing the effectiveness of the written contract, etc., until the happening of the contingency or the compliance with the condition, citing *Penniman v. Alexander,* 111 N. C., 427, which, in its turn, cites *Kerchner v. McRae,* 80 N. C., 219; *Braswell v. Pope,* 82 N. C., 57; *Woodfin v. Sluder,* 61 N. C., 200. The learned reporter thus head-notes the case of *Penniman v. Alexander, supra:* "The maker of a promissory note, or other similar instrument. if sued by the payee may show as between them a collateral agreement putting the payment upon a contingency, and it is competent also for a defendant sued as acceptor of such instrument to show in defense the conditions of his acceptance." And to the same effect is *Aden v. Doub,* 146 N. C., 10, where we held: "The position taken by the plaintiff, that the evidence tended to contradict a written instrument, and, besides, a negotiable instrument is clearly without any support in law. In the first place, the written agreement was made at the very time the note was given, as a part of the same transaction (and the plaintiff had notice of the condition on which it was delivered). This does not bring the case within the rule of evidence by which it is forbidden to vary or contradict a written instrument, nor within the other rule protecting an innocent purchaser for value of a negotiable instrument. It is not a correct proposition in law, as stated in the plaintiff's prayer for instructions, that a negotiable instrument is of such high dignity as a medium of exchange that the parties cannot annex any law-

ful condition to its payment at the time it is given, when the action to recover it is between the original parties to it," or the holder of the note is fixed with notice of the agreement, for he is not then a *bona fide* purchaser. (The case of *Penniman v. Alexander, supra,* was reaffirmed in 115 N. C., 555.) The question is fully discussed, as to this and other features of this case, in *Evans v. Freeman,* 142 N. C., 61, where we said that "Applying the rule we have laid down, it has been adjudged competent to show by oral evidence a collateral agreement as to how an instrument for the payment of money should in fact be paid, though the instrument is necessarily in writing and the promise it contains is to pay so many dollars. In support of the proposition, as thus stated, we may refer specially to comparatively recent decisions." *Hughes v. Crooker,* 148 N. C., 318 (opinion by *Connor, J.),* held that when a promissory note is given in pursuance of the terms of a written contract, evidence can be introduced of a contemporaneous oral agreement, made as a part thereof, to the effect that the note and contract were executed and given upon a condition, which has not been performed. This does not vary by parol the terms of the written instrument, but postpones its operation until the happening of the contingency. I could cite additional authorities in this and other jurisdictions to the same effect, and almost without number, but will add only a few in this Court: *Garrison v. Machine Co.,* 159 N. C., 285, 289-290; *Sykes v. Everett,* 167 N. C., 600; *Bresee v. Crumpton,* 121 N. C., 122 (opinion by *Clark, J.*); *Gazzam v. Ins. Co.,* 155 N. C., 330; *Bowser v. Tarry,* 156 N. C., 35, at pp. 38-39; *Pratt v. Chaffin,* 136 N. C., 350; *Mercantile Co. v. Parker,* 163 N. C., 277. No case states the principle more strongly or clearly than *Bowser v. Tarry, supra* (opinion by *Hoke, J.),* and he adds that "it is now very generally recognized."

But I am not bound to sustain that proposition in order to show that the plaintiff cannot be proceeded against until the county fulfills its part of the agreement so solemnly entered into by it.

My second contention is this, and I think that there can be no question as to its correctness if our own decisions are of force or value as authorities, or precedents: Whether or not the condition which was annexed contemporaneously with the delivery of the notes to the county, affects the operation or validity of the contract, is not essential to the protection of the plaintiffs from the injustice of making them pay what others owe. We may waive, or pretermit this view, and yet, they are still without any liability unless, and until, the county has shown its compliance with the condition, for if the condition was annexed by parol, as a collateral part of the contract, not in writing and not intended to be, or to be more accurate, if it is the other part of the contract (and does not contradict the written part), the county is just as much bound to

25—182

perform the condition before suing the plaintiffs as if it affected the operation going into effect, validity, or enforcibility of the contract. Mr. Clark in his Treatise on Contracts (2 ed.), at p. 85, says: "Where a contract does not fall within the statute the parties may at their option put their agreement in writing, or may contract orally, or put some of the terms in writing and arrange others orally. In the latter case, although that which is written cannot be aided by parol evidence, yet the terms arranged orally may be proved by parol, in which case they supplement the writing, and the whole constitutes one entire contract." Commenting upon the quoted passage, we substantially said in *Evans v. Freeman, supra;* that in such a case there is no violation of the familiar and elementary rule we have before mentioned, because in the sense of that rule the written contract is neither contradicted, added to, nor varied; but leaving it in full force and operation as it has been expressed by the parties in the writing, the other part of the contract is permitted to be shown in order to round it out and present it in its completeness, the same as if all of it had been committed to writing. The oral evidence tends to insert by parol the complement of the written terms so as to present the whole of it as the parties intended it should be.

All the cases hold, and there are many of them, that in so doing there is no contradiction of the written terms, but they can coexist in perfect harmony. I have already referred to some of that class of cases. *Justice Hoke* states the general proposition well in *Typewriter Co. v. Hardware Co.,* 143 N. C., 97, and citing Broom on Parol Evidence, sec. 117, he says that parol evidence is admissible to show an agreement or method of discharging the contract other than that specified in the bond. He discusses the matter fully and assigns the reason for the rule, citing *Woodson v. Beck,* 151 N. C., 144, and *Walker v. Venters,* 148 N. C., 388 (relied on in the opinion of the Court in this case) as necessarily excepted from the operation of the principle by the peculiar terms of the contracts upon which those suits were brought. I also refer to *Cobb v. Clegg,* 137 N. C., 153, where the subject is fully discussed. If we should not follow the principle stated, we might shake the validity of many transactions in our banks which have been recognized as entirely within the law, for deposits, of collaterals to secure debts are conducted in the same way and accompanied by similar parol agreements to the one in this case. No one has ever doubted their legality. As pointed out in *Evans v. Freeman, supra,* and *Typewriter Co. v. Hardware Co., supra,* the promise by note or otherwise, to pay so many dollars at a specified time is not contradicted by, nor does it conflict with, oral terms as to how the money should be paid, or by showing that something was to be done by the other party before the money should be forthcoming. But there is a more recent case which fully and completely covers our

case and upon similar facts. *Kernodle v. Williams,* 153 N. C., 475, at p. 476 and 477, where the *Chief Justice* says: "While it is true that a contemporaneous parol agreement is not competent to vary, alter, or contradict a written agreement, still when a contract is not required to be in writing, it may be partly written, and partly oral, and in such cases when the written contract is put in evidence, it is admissible to prove the oral part thereof. *Nissen v. Mining Co.,* 104 N. C., 310. This is not varying, altering, or contradicting the written instrument, but merely showing forth the entire contract that was made." He then instances the conditions of a mortgage, and a penal bond, and says: "So also, with a penal bond, which is generally in a large sum, with a condition annexed by which it is of no effect unless a certain event happens, and even then the obligor is usually called on to pay a much smaller sum. There are many other instances which might be given of a like nature." Referring to the special facts of his case, the *Chief Justice* puts our case, in principle, when he says further: "In the present case the contract, as alleged by the defendants, and found to be true by the jury, in its entirety, was that the plaintiff gave his daughter $500 absolutely, and took her note for the other $915, upon which certain payments were to be made (which are admitted to have been made) and the balance was given conditionally that it was to be accounted for with the father's executor, *i. e.,* to be required only if needed for the payment of the debts of the estate. Such an agreement is not a contradiction of the terms of the bond, for the full amount would be paid, if necessary, upon the happening of the conditions stipulated for. Agreements of this nature have often been held valid." But he goes on and refers to our cases as decisive of the question, such as *Penniman v. Alexander, supra; Evans v. Freeman, supra,* and *Typewriter Co. v. Hardware Co., supra.* He continues: "In *Evans v. Freeman, supra,* it is said that if an agreement is partly in writing and partly oral, evidence is competent 'for the purpose of establishing the unwritten part of the contract, or even of showing the collateral agreement made cotemporaneously with the execution of the writing.'" He then adds that this has been repeatedly held by this Court, and "it has been adjudged competent to show by oral evidence a collateral agreement as to how an instrument for the payment of money should, in fact, be paid, though the instrument is necessarily in writing, and the promise it contains is to pay so many dollars." To same purport, *Typewriter Co. v. Hardware Co., supra;* and finally he collates the law in this wise: "The subject is thus summed up by Browne on Parol Evidence, 252, who, quoting the last-named case *(Brook v. Lattimer,* 44 Kan., 431), and many others, says that parol evidence is competent between the original parties to show that the consideration was illegal, or to show the real consideration and purpose, or to show that it

was fraudulent, or to show an additional collateral consideration, giving many instances—among them the most common being to show that a note given by a child to a parent, though absolute in terms, was by parol agreement to be deemed an advancement." *Justice Manning* dissented in that case, but at page 485 admits the correctness of the principle we have stated, but says it is confined to a certain class of cases, and "it will be discovered, I think, that none of these written instruments were based upon a present consideration or that the maker executed them as evidence of an existing liability, *but for accommodation of the payee and without consideration.*" The learned justice largely bases his dissent upon the ground that in that case the oral evidence would not only contradict the written part of the contract, but destroy the bond. But that would not be the case here, as if the county prosecuted the defaulting parties and their sureties with proper diligence and failed to recover, it would have complied with the condition (or contingency), and the bond and mortgage would immediately come into full operation as a security for the county (as said by the *Chief Justice* in the *Kernodle case*); for the latter, even under the entire contract, written and parol, was only a guarantor for collection, and subject only to the obligation of such a guarantor. So it comes to this, that in the *Kernodle case* the Court was practically unanimous as to the question we have here for decision. Other authorities are *Wilson v. Powers,* 131 Mass., 539; *Pym v. Campbell,* 6 El. & Bl., 88; 1 Elliott on Evidence, sec. 575. So that I say finally, as to this part of the case, that in either of the views presented by me, the judgment of the court below, and the opinion of this Court, about to be promulgated, in which it is affirmed with slight modification, are erroneous, and fly in the face of every well considered case of this Court upon the subject.

Now let us look at this case from another viewpoint, and this concerns the larger equity involved. The jury, by their verdict at June Term, 1920, found as follows:

1. That Thomas Thomas, trustee of the sinking fund, misappropriated $13,236.39, and is indebted to the county in that amount.

2. That the United States Fidelity and Guaranty Company, as surety of Thomas Thomas, as treasurer of the county, owed nothing.

3. That Mace, administrator of Alonzo Thomas, as surety for Thomas Thomas, trustee, etc., is indebted to the county in the sum of $5,000.

4. That the note and mortgage of T. M. Thomas and wife, Laura, delivered to Thomas Thomas and assigned to the county, were not taken and accepted by the latter with the agreement that they should be used only after the other securities held by the county for Thomas Thomas, trustee, were exhausted, as alleged in the complaint. (This part of the verdict set aside by *Judge Connor.*)

5. The fifth issue as to the indebtedness of T. M. Thomas and wife to the county on the note for $13,500 was not answered.

The court at June Term, 1920, gave no judgment, but merely set aside the answer to the fourth issue and allowed the plaintiffs to amend generally, and it will be seen now that the issues submitted by *Horton, J.*, at June Term, 1921, are different from those submitted by *Connor, J.*, at June Term, 1920. They are as follows:

"4. In what amount, if any, is W. A. Mace, administrator, etc., of Alonzo Thomas, indebted to Carteret County on account of the term of said Alonzo Thomas as treasurer of Carteret County, beginning on the first Monday in December, 1914, and ending at the death of said Alonzo Thomas on 18 November, 1915? Answer: '$5,000, and interest.'

"5. What amount, if any, is Carteret County entitled to recover of defendant United States Fidelity and Guaranty Company as surety for said Alonzo Thomas as treasurer of Carteret County for said term, beginning on the first Monday in December, 1914? Answer: '$8,236.49, and interest.'

"6. Were the note and mortgage given to Thomas Thomas by plaintiff given as an accommodation paper to said Thomas Thomas, as alleged by plaintiffs? Answer: 'Yes.'

"7. Is the defendant, Carteret County, a holder for value as between it and the plaintiffs of the $13,500 note and mortgage made by plaintiffs? Answer: 'Yes.' (But it had notice of the condition because it agreed to it at the time.)

"8. Was the note and mortgage of plaintiffs executed to Thomas Thomas and assigned to Carteret County taken and accepted with the understanding and agreement that the same should be used by the county only after the bonds of said Thomas Thomas and of said Alonzo Thomas had been exhausted, as alleged by plaintiffs, and then applied to the unpaid balance due said county on account of the Thomas Thomas trusteeship of the sinking fund, and the treasurership of said Alonzo Thomas? Answer: 'Yes.'

"9. What sum, if any, is Carteret County entitled to recover of plaintiffs on account of the note for $13,500, secured by mortgage assigned to said county by Thomas Thomas? Answer: '$13,236.49, with interest from 1 October, 1916, to be credited with $5,000, and interest on same from 15 June, 1921, due by the estate of Alonzo Thomas as surety for Thomas Thomas, trustee of the courthouse bond sinking fund,' the last issue having been answered by the court by consent of parties that the court might answer same after verdict as a matter of law."

The court then entered the following as a part of its judgment: "It is now considered and adjudged by the court that the answers to the issues numbered 4 and 5 be, are on motion of defendants, other than

Carteret County, set aside as a matter of law, for the reason that the jury found at the June Term, 1920, by its answer to the first issue that Thomas Thomas, trustee of courthouse bond fund, received and misappropriated the funds. It is further ordered and adjudged by the court that Carteret County recover nothing against the United States Fidelity and Guaranty Company as surety, and that said defendant United States Fidelity and Guaranty Company go without day and recover its costs."

Judgment was then given against Mace, administrator of Alonzo Thomas, for $5,000, and the costs. A judgment against the plaintiffs for $13,236.49, less the $5,000 adjudged against Mace, administrator, and the mortgage of the plaintiffs assigned to the county was ordered to be foreclosed and the land therein described sold to pay the said debt of plaintiffs to the county.

It will be observed that *Horton, J.,* set aside the fourth and fifth issues of June Term, 1921, *as matter of law,* because the jury at June Term, 1920, had found, in answer to the first issue that Thomas Thomas, trustee of the courthouse fund, had received and misappropriated the same.

How the fourth and fifth issues of June Term, 1921, could be set aside, as matter of law, because of the finding on the first issue, I fail to perceive. Nobody doubted that Thomas Thomas, as trustee of the courthouse fund, had defaulted and was indebted to the county in the sum of $13,236.49, but this did not prevent Alonzo Thomas, as treasurer of the county, from being indebted also to the county if, as treasurer, he had received the funds from Thomas Thomas, no matter where they came from, so that he received them by virtue or by color of his office. Having received them in that way, he became responsible for them to the county, and it appears from the evidence in the record, and the finding of the jury, that Thomas Thomas, as trustee, and the same as treasurer, and also Alonzo Thomas, as treasurer, had jointly and by their indiscriminate use, and misuse, of the county funds in their hands, made themselves liable for the same. It makes no difference from whence the money came, or how they juggled with those funds, so that they received them "by virtue of" or "by color of" their several offices, the two terms having very different meanings. *Judge Reade* has said: "The defendants insist that by virtue and under color mean the same thing. They mean very different things. For instance, the proper fees are received by virtue of the office; extortion is under color of the office. Any rightful act in office is by virtue of the office. A wrongful act in office may be under color of the office. Color in law means not the thing itself, but only an appearance thereof; as, color of title means only the appearance of title." *Broughton v. Haywood,* 61 N. C., 383.

If the position of the United States Fidelity Company is correct, then the county could not have recovered money belonging to it, as its court-house fund, if Thomas Thomas, the original defaulter, who was insolvent, had paid it over to either Thomas Thomas, treasurer, or Alonzo Thomas, treasurer. But that is not the law, as *Broughton v. Haywood, supra,* shows, and it is upon the principle as therein stated that the sureties of the two defaulters were charged with liability by the jury, and really also by the referee. They were manipulating the county's money as if it belonged to them, for their own benefit and advantage, playing fast and loose with the county finances, whereas the proper place, as said in the opinion of the court in this case, for the county's money to be was in the county treasury, and but for the malfeasance of these two officers, who forgot that they were fiduciaries, it would have been there long ago, but it should not get there, and the county, as shown by its answer, does not want it to get there, by a gross injustice to the plaintiffs, who as a mere gratuity, helped to secure it to the county, upon its sacred promise that it would not call on the plaintiffs, by suing on the note or foreclosing the mortgage, until it had exhausted all other securities held by it in law or in equity, and it has expressly asked that such be not done. The good people of Carteret County would prefer that the treasury be empty than to subject the note and mortgage to the payment of the amount due by the default of its officers, in violation of its agreement not to fall back upon the note, and it expresses itself as ready and willing to comply with its part of the agreement. It would not have received this security, but for this promise on its part, and which it is asking now that it may be permitted to keep and perform.

The plaintiffs are volunteers, while the United States Fidelity Company, though professing to be a benefactor to our people, has come into this State to ask for the patronage of its citizens, for a consideration, and a good one, which it has been receiving from them for years and filling its coffers, and now is asking to transfer its obligation, purchased for a consideration by the defaulting officers, to the shoulders of the plaintiffs, who acted gratuitously to help the county out of its difficulty and financial embarrassment. Which of the two is entitled to the first consideration of this Court, or any court as far as that is concerned. The law is with the plaintiffs, and the highest and strongest equity which appeals to a court of conscience for its aid by executing justice. *Judge Connor* very properly set aside the answer to the original fourth issue, as being against the clear weight of the evidence, the eighth of the new issues, relating to the same question, that is, the manner in which the note and mortgage were held by the county, was answered in favor of plaintiffs that the bonds of the two Thomases should be first exhausted before plaintiffs should be compelled to pay anything, and only

used to pay any balance due after such bonds were exhausted. The jury further find that the note and mortgage were strictly accommodation papers. There was no conflict between the answer to the first issue, and the answers to the new fourth and fifth issues. They related to different matters and were not in any way inconsistent, but can well stand together. His Honor's order setting them aside was not only error in law, but also error in fact, and I have already demonstrated that this is true by showing that both Thomas Thomas, as trustee, and Alonzo Thomas, as surety, could be indebted to the county at one and the same time, and even if there was error in law, he could *only* order a new trial as to those issues, and not vacate them and stop there, if it was competent at all for the judge to render a judgment upon two verdicts returned before different judges and especially after there had been a general order to replead. Such procedure might produce great confusion, if followed as a precedent. But I contend that, if we take both verdicts into consideration, the answers to the fourth and fifth issue should be reinstated, and judgment thereon rendered for the county. This is the safest, shortest and swiftest method by which the county can be restored to its own, and has the great advantage of enabling the county to discharge its legal, equitable and moral duty to the plaintiffs by redeeming the promise upon the faith of which it obtained their note and mortgage. It is asking that it be allowed to do so, and why not let it do so, and make the United States Fidelity and Guaranty Company pay its share of the liability, which it assumed for a valuable consideration.

Reverting now to a more intimate and particular discussion of the issues, and evidence to support them, Horton, J., did not set aside the third and fourth issues because they were against the weight of the testimony, and he let the other issues stand unchallenged, and especially the eighth, which found the agreement made contemporaneously with the delivery of the note and mortgage to be as alleged by plaintiffs. Connor, J., also believed there was evidence to support the plaintiff's contention, and he set aside the fourth of the first set of issues as being against the clear weight of the testimony. The fourth issue of that set corresponds somewhat with the eighth of the second set, though the last is broader and more comprehensive. So we have the concurrent opinions of Judges Connor and Horton to the effect that there was evidence to be considered by the jury on the material issues. In this contention I will refer to *Palmer v. Lowder,* 167 N. C., 331, at p. 333, where the *Chief Justice* says: "While parol evidence is not admissible to vary or contradict a written agreement, yet when the agreement is not one which the statute requires to be in writing, it is competent to show by parol that only part of the agreement was in writing, and what was the rest

of the agreement. Indeed, no proposition of law can be better settled." He cites many cases, including *Kernodle v. Williams, supra; Nissen v. Mining Co.,* 104 N. C., 309; *Colgate v. Latta,* 115 N. C., 138, and says Abbott's Trial Evidence, p. 294, thus states the same principle: "A written instrument, although it be a contract within the meaning of the rule on this point, does not exclude evidence tending to show the actual transaction, where it appears that the instrument was not intended to be a complete and final settlement of the whole transaction, and the object of the evidence is simply to establish a separate oral agreement in the matter as to which the instrument is silent and which is not contrary to its terms nor to their legal effect." This passage from Abbott's book is quoted with approval in *Buie v. Kennedy,* 164 N. C., 298. *Allen, J.,* states the rule very aptly in *Brown v. Mitchell,* 168 N. C., 312, and actually sustained the introduction of a brand new stipulation into a written contract, citing *Wilson v. Scarborough,* 163 N. C., 384, and other cases already mentioned by me, and he further held the consideration of the contract to be amply sufficient. See, also, *Potato Co. v. Jenette,* 172 N. C., 1.

The contention in the Court's opinion by the *Chief Justice* that *Kernodle's case* has no application here, is based upon a total misconception, both as to what that case decides and as to what is involved in this case. This is not an attempt to reform a written instrument, contradict or vary it. *Pearson, J.,* with his usual legal acumen, accuracy and vigor of perception, makes it very clear in *Shelton v. Shelton,* 58 N. C., 292, 294, 295, that the rule of evidence as to altering a written instrument by parol is not at all violated or infringed. Besides, the deed of mortgage was not the only paper deposited as collateral, but the note was the principal thing and the deed would go with it, if it had not been deposited, as an incident to it. *Hyman v. Devereux,* 63 N. C., 624. Nor is the deposit of a collateral required to be in writing. The deposit of a note as collateral is generally by parol, and the commercial world will be amazed to know that this proposition is even disputed. But a complete answer to the contention is, that this kind of transaction is not required to be evidenced by a writing, as the statute of frauds has nothing to do with it, and the Court travels far afield to support its untenable position when it advances such a reason. Nor has the doctrine of trusts any bearing whatever on the question. It is not a parol or oral trust, and this excludes from the case all that is said about *Gaylord v. Gaylord,* 150 N. C., 222; *Campbell v. Sigmon,* 170 N. C., 351; *Walters v. Walters,* 172 N. C., 330, and the other cases cited in this connection. This is distinctly, and only, the deposit of collaterals, that is, the note secured by the mortgage, upon a contingency, or a condition, which may lie in parol, and is not required to be in writing. Cole-

brook on Collateral Securities, pp. 376 and 377, thus states the well-known rule of law and the commercial custom and practice: "Parol testimony is received to establish the fact that the transfer of certificates was intended as collateral security only, although absolute in terms. This principle was applied to a stock transaction, where the assignment of title was absolute, the rule excluding parol testimony to vary or contradict a written instrument having reference only to the language used therein and not forbidding inquiry into the object of the parties in executing and receiving the same," citing many cases in the notes in support of the text, and among them *McMahon v. Macy,* 51 N. Y., 155; *Lathrop v. Kneeland,* 46 Barb., 432; *Jones v. Portsmouth R. R. Co.,* 32 N. H., 544; *Pittsburg R. R. Co. v. Stewart,* 41 Pa. St., 54; *Tonica R. R. Co. v. Stein,* 21 Ill., 96. The contingency or condition is, that the county shall first exhaust its other securities before resorting to the notes and mortgage, a transaction not unusual, as our reports will clearly and fully show. See Mickie's Digest, title "Contracts," and *Kelly v. Oliver, supra; Evans v. Freeman, supra; Hughes v. Crooker, supra,* to which we add *Hinton v. M. R. F. Life Asso.,* 135 N. C., 314, where *Justice Connor,* at p. 326, said: "The testimony was competent. It is said, however, that to permit the testimony to be introduced violates the rule excluding parol evidence to contradict a written instrument. The proposed testimony in no manner contradicted the terms of the policy. It was offered to prove an agreement collateral to the policy." Also *Blair v. Security Bank,* 103 Va., 762, where the Court held it competent to prove that a paper delivered to the payee, or to any other person who is the holder thereof, on agreement that it was not to take effect except in a certain contingency or on condition, the latter must first happen or be performed before the holder can sue or recover on it. And this we add is true in all cases, except where the writing itself is contradicted or varied, which is not the case here, and even not as much so as in *Cobb v. Clegg, supra,* and some of the other cases we have mentioned. See, also, *Hicks v. Critcher,* 61 N. C., 353.

I wish it to be clearly understood that I do not challenge the correctness of *Gaylord v. Gaylord,* and the other numerous cases supposed to be like it, because I am not required to do so to establish my contention, as they bear no likeness to this case, and are not pertinent authorities. I have only adverted to these matters because they are set forth in the opinion of the Court as the grounds upon which it attempts to support what I consider to be a very unfortunate ruling. It is all beside the real merits of the case and the law involved in its proper decision, because, in any view, the plaintiffs are entitled to have the judgment against Mace, administrator, and the United States Fidelity Company entered upon the verdict. The eighth issue establishes their right, and

has not been reversed, or impaired in its force, nor have any of the other issues essential to the enforcement of plaintiffs' right. The county says in its answer: "Said Carteret County and M. Leslie Davis, treasurer, join with the plaintiffs in asking the court to fix liability upon the estate of Alonzo Thomas and upon the United States Fidelity and Guaranty Company in such amounts as the evidence and law in this case will fix them with, on account of the default and embezzlement of the said Thomas Thomas as hereinbefore set out, and asks the court, if such liability is fixed in any amount against the estate of Alonzo Thomas or the United States Fidelity Company, that said amounts, as fixed, be paid in exoneration upon the said $13,500 note executed by the said T. M. Thomas and wife and endorsed for value by Thomas Thomas to Carteret County; and the said Carteret County and M. Leslie Davis, treasurer of Carteret County, do not in any way or manner waive any of their rights hereby against the plaintiffs in this action." Even where a contract is required by the statute of frauds to be written, if it is admitted in the pleadings, the statute is thereby waived and proof by parol will answer instead of a writing, and so also with the rule as to oral evidence, to prove the entire contract, part of which is in writing. The cases already cited show this conclusively. Nor is this an effort to convert a deed absolute on its face into a mortgage, and nothing like it. There is not even a suggestion in the mortgage as to the conviction of Thomas Thomas of embezzlement, nor as to his pardon and the condition of it. Nobody expected anything to be said in the mortgage about T. M. Thomas' nephew being exempted, if some one else paid the debt or was sued for it, as it was not intended to be in there, but to take the form of a solemn collateral promise of the county (which admits it) that its other securities should first be exhausted, nor is there anything akin to a Pickwickian promise, which is purely imaginary, and rather far fetched, but, on the contrary, it is a promise expressly made by the county, and which it is anxious to perform in spirit, and in letter, if the court will only give it a chance to do so. There is nothing wrong in this—at least the county does not think so, and refuses to assent to such a suggestion by asking now to perform the condition. It makes no difference how long litigation is protracted. It was not the fault of the plaintiffs, but of the United States Fidelity Company, who, if any one, has prolonged the litigation, but if anybody has done so, it surely is not the plaintiffs.

Counsel and parties will be surprised to find that they are accused of protracting litigation unnecessarily by trying to defend and protect their clients' rights, and of invoking the invective of Samuel Butler in this couplet from Hudibras, "He could distinguish and divide, A hair 'twixt south and southwest side." This was intended for a particular

class of reformers, and not for the lawyers. That famous poem was conceived and written to satyrize a certain officer who lived in the time of the Commonwealth, and who was enforcing too drastically the observance of laws by Parliament for the suppression of the innocent sports and amusements of the people, and it did not apply to the weightier matters of the law. If there is any excuse for the reference, a more appropriate one would be Dickens' Satire of Lord Eldon, the Chancellor, in his Bleak House, "but even the noble Lord, while a little slow, preserved and protected equitable rights, though he was called the great procrastinator." People who believe in the rights of others, as well as their own, are of the mind that nothing is ever finally decided until it is decided right, but after all is said, the county has the money owing to her, within her grasp, if it is only allowed to take it, as we have before shown. Thomas' pardon has nothing to do with this case, which concerns only the enforcement of a clearly worded and admitted contract, with the equities of all kinds on the plaintiffs' side.

There is no agreement in the record that militates at all against my views, but the one that is there accords fully with them, and itself recognizes and submits to the enforcement of the condition, upon which the papers were delivered to the county, and it does not rely on any such agreement to defeat the plaintiffs' action. The agreement expressly provides that the plaintiffs are only to pay what is left of the debt after applying as credits the amounts due from Mace, administrator, and the Fidelity Company, which does not appear in the opinion of the Court. But the cases of *Kelly v. Oliver, supra,* as to the condition upon which the note and mortgage were taken by the county, and *Kernodle v. Williams, supra,* as to the admissibility of parol evidence to show the unwritten part of the agreement, are conclusive as to plaintiffs' equity. Those cases have been approved frequently since they were decided.

In conclusion, I call attention to the manifest error in setting aside the fourth and fifth issues. This error was a clear misapprehension of the nature of the issues with which they were supposed to be in conflict.

The plaintiffs are not attacking or criticizing the issues and answers thereto as they now appear in the record, but the action on the two set aside by the judge, and the answer to the ninth by him, which, as a matter of law, depends upon the ones set aside. His Honor was evidently misled by the second issue of 1920, which was on another bond, and cause of action, set out in the original complaint against another principal with the same surety company, for a different term and a different office. It had no reference to the cause of action set out in issues four and five, June Term, 1921, against another treasurer, Alonzo Thomas, on other bonds, with the same surety, introduced in the action by the further pleadings, filed by permission of the court after June

Term, 1920, under the order at that term. There is no inconsistency
between the two causes of action and the issues, though the surety
involved is the same company. His Honor also seemed to be under the
impression that two different men and their sureties could not be liable
for the same defalcation, which is of course erroneous.

Whatever may be said, the outstanding fact remains that the defend-
ant in its answer admits the contemporaneous agreement to exhaust
other securities, and asks of the court, that whatever may be done, that
agreement should not be violated. The case is exceedingly plain, and
there is but one conclusion to be drawn from it, not that the people will
be taxed one cent more, as stated in the Court's opinion, but that the
county, which is asking equitable relief, is itself willing to do full equity
in the premises. Nothing that can be said, pro and con, as to the facts
or the law, can overcome the force of its admission and its willingness to
abide by it.

The county should have a judgment on the issues as returned by the
jury, but the court refuses its request that the plaintiffs, if they are
required to pay, be subrogated equitably to its rights, as against the
Fidelity Company.

While the county was not the original payee named in the note and
mortgage, it took both with notice of the stipulation touching the con-
tingency or condition as to exhausting the securities, and in truth it was
a party to that stipulation. So that it was not an innocent purchaser
and does not pretend that it is.

While I really believe, and confidently insist, that the judgment
should be as I have indicated, it should, in any event, be so modified as
to provide that the plaintiffs, if they are required to give up their note
and mortgage and pay this debt to that extent, should be equitably subro-
gated to all the rights of the county as against the United States Fidelity
and Guaranty Company, with the verdict on the third and fourth issues
restored. And that is what it asks should be done.

It is hard—very hard measure—that the plaintiffs should be made to
carry this heavy indebtedness, and the really responsible party should be
allowed to go free, when the eighth issue and the answer to it now stand
unreversed and unimpaired, and alone establish that the note and mort-
gage were given upon a contingency which had not happened, or a
condition which has not been performed.