HAWKINS v. JOHNSON. (No. 5498.)*

(Court of Civil Appeals of Texas. Austin. Nov. 3, 1915. Rehearing Denied Dec. 22, 1915.)

1. EVIDENCE ⬅420 — PAROL EVIDENCE AFFECTING WRITING — EVIDENCE SHOWING CONDITIONAL CHARACTER OF NOTE.

In a suit on a note by the payee, evidence was admissible on behalf of the maker that the note was given for bank stock sold, that it was agreed that if within 30 days the payee should elect not to sell his stock, then he might retain the cash payment as a bonus, and the maker should be released from his obligation to pay, and that the payee so elected to retain his stock.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1728, 1795, 1800, 1804, 1815, 1821, 1929–1944; Dec. Dig. ⬅420.]

2. EVIDENCE ⬅419—NOTES—CONSIDERATION.

In a suit on a note, given for bank stock, by the payee, parol evidence that the note was conditional upon the payee's not electing to retain his stock within 30 days, and that he so retained it, was admissible to show that the note was without consideration.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1912–1928; Dec. Dig. ⬅419.]

Appeal from District Court, Runnels County; Jno. W. Goodwin, Judge.

Action by W. P. Hawkins against J. M. Johnson. Judgment for defendant, and plaintiff appeals. Affirmed.

W. P. Hawkins, as plaintiff, sued J. M. Johnson, as defendant; the cause of action being founded upon a promissory note, executed by Johnson and made payable to Hawkins. The defendant presented an answer which, among other things, raised the issues of fact which were submitted by the court to the jury. The court instructed the jury to return a verdict for the plaintiff for the amount sued for, unless they found for the defendant under the second paragraph of the charge, which paragraph read as follows:

"Second. If, from the evidence in this case, you believe that on or about the 2d day of April, 1912, plaintiff W. P. Hawkins and J. M. Johnson and F. W. Merrick made and entered into a contract, by the terms of which it was mutually agreed by and between them that W. P. Hawkins would sell and Johnson and Merrick would buy the 10 shares of bank stock owned by plaintiff, that by the terms of said contract the price to be paid for said stock was $1,150, $150 or $152.50 cash, and the balance to be paid 30 days after date of said contract, and if, from the evidence, you further believe that by the terms of said contract, if any, it was further mutually agreed by and between said parties that if at or prior to the expiration of 30 days from the making of said contract, if any, plaintiff Hawkins should elect not to sell his said bank stock or to retain it, that plaintiff should retain the cash payment as a bonus or reward for remaining in said bank, and that defendant and Merrick should be released from their obligation to pay the balance for said stock, and if from the evidence you believe that the note sued upon was given for the balance of the purchase price for said stock, and if from the evidence you further believe that at or before the expiration of 30 days from the time said contract, if any, was made, plaintiff elected to retain his stock in the bank and so notified defendant or Merrick, then and in that event you will find for defendant."

The jury returned a verdict for the defendant, judgment was rendered accordingly, and the plaintiff has appealed. Though the plaintiff testified to the contrary, the evidence submitted by the defendant supports the finding of the jury.

Tom Patterson, of Winters, and G. N. Harrison, of Brownwood, for appellant. Wade & Doss, of Ballinger, for appellee.

KEY, C. J. (after stating the facts as above). [1] The trial court ruled that appellee had the right to prove by parol evidence the matters alleged in his answer and submitted to the jury by the charge quoted; and that the matters so alleged constituted a defense and relieved him from liability upon the note sued on. Appellant has assigned error upon the rulings referred to upon the ground that they violated that well-established rule of law which, in the absence of fraud, accident, or mistake, denies to either party to a written contract the right to vary its terms by parol testimony. That question has been given careful consideration by this court, and the conclusion has been reached that this case does not fall within the scope of the rule

referred to, but belongs within a class of cases that are held not to impinge upon that rule. While there may be some decisions to the contrary, the weight of authority seems to be in line with the decision of the Supreme Court of the United States in Burke v. Dulaney, 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698, from which we quote as follows:

"This action was brought by the testator of the appellees, upon a writing purporting to be the promissory note of the appellant for $4,308.80, dated Salt Lake City, Utah, August 10, 1883, and payable one year after date, for value received, at the bank of Wells Fargo & Co. in that city, with interest at the rate of 6 per cent. per annum from date until paid.

"The defendant, Burke, denied his liability upon the note, and at the trial below was sworn as a witness on his own behalf. In support of his defense, as set forth in the answer filed by him, he stated the circumstances under which the note was given. He said: 'Mr. Dulaney bought this group of mines—the Live Yankee and the Mary Ellen. He came to the Walker House in Salt Lake, and wanted me to run them for him. I said I would not do it unless I got a show to get some interest in the property. He says, I will carry an interest for you, and you can take it if you want it, and if not, you can give it back to me after you see the property.' To this testimony the plaintiff objected, and, the defendant admitting that the agreement referred to by him was oral, the objection was sustained. To this ruling he excepted.

"Being asked what he did after giving the note in suit, he answered: 'I gave the note. I worked on the property which was done some time in September; worked the property until March; settled up all of its debts, paid them, notified Dulaney I wanted nothing more to do with the property; that I was going to Idaho territory, to Cœur d'Alene mines, and as I was ready to give him a deed at any time he would send me my note. That is all.' Objection being made by the plaintiffs to this testimony, the defendant offered to prove 'that at the time of the giving of the note and prior thereto, Dulaney, the payee of the note, agreed with Mr. Burke, the maker of the note, that the note should be given to represent the price of the interest that Mr. Burke was to have, conditioned upon his demanding it after an inspection of the mining property mentioned.' He offered also to prove that after inspecting the property and testing it, the defendant notified testator that he did not want the interest; that he was prepared to make a deed for the interest to the latter, and demanded the delivery of his note. All this evidence was excluded by the court upon motion of the plaintiffs, to which ruling the defendant excepted.

"The defendant having stated that the conversation with the testator above referred to, and which was excluded by the court, took place prior to the execution of the note, he offered to prove that at the time the note was made, the same agreement was made orally between him and the testator. This testimony was also excluded, and he excepted.

"The following question was propounded to him at the trial: 'State whether or not prior to your making the note the plaintiff agreed with you that you could explore, work, and develop the mining claims mentioned in the answer, and if at any time before the maturity of the said note you should desire so to do that he would relinquish said option of purchase—that you could relinquish your said option of purchase, and that he, plaintiff, would cancel the note and accept the deed in full discharge of the note and the cancellation thereof.' The defendant having admitted that the agreement referred to in the question was oral, the court excluded the evi-

dence and he excepted. The court also refused to allow him to state whether he examined, worked, and developed the mining claims mentioned in his answer, and whether he had refused to take such claim under the agreement with the plaintiff.

"At the trial the defendant offered in evidence a deed executed by him to the plaintiff, conveying to the latter, in consideration of the surrender of the note in question, all his right, title, and interest in the above property—the same deed that had been filed by the defendant with his answer. The court held this evidence to be inadmissible unless the defendant proposed to show that the plaintiff accepted the deed. To this ruling the defendant excepted. The defendant was not present when Dulaney took a deed from the owner of the mining property nor was it ever delivered to him. * * *

"The general rule that a written contract cannot be contradicted or varied by evidence of an oral agreement between the parties before or at the time of such contract, has been often recognized and applied by this court, especially in cases in which it was sought to deprive bona fide holders of or parties to negotiable securities of the rights to which they were entitled according to the legal import of the terms of such instruments. Renner v. Bank of Columbia, 22 U. S. (9 Wheat.) 587 [6 L. Ed. 166]; Brown v. Wiley, 61 U. S. (20 How.) 442 [15 L. Ed. 965]; Specht v. Howard, 83 U. S. (16 Wall.) 564 [21 L. Ed. 348]; Forsythe v. Kimball, 91 U. S. 291 [23 L. Ed. 352]; Brown v. Spofford, 95 U. S. 474 [24 L. Ed. 508]; Martin v. Cole, 104 U. S. 30 [26 L. Ed. 647]; Burnes v. Scott, 117 U. S. 582 [6 Sup. Ct. 865, 29 L. Ed. 991]; Falk v. Moebs, 127 U. S. 597 [8 Sup. Ct. 1319, 32 L. Ed. 266].

"Several of these cases were cited in the opinion of the court below, and have been cited here, as supporting the exclusion of the evidence which the appellant offered to introduce. [Dulaney v. Burke] 2 Idaho, 719, 23 Pac. 915. It is supposed that Burnes v. Scott is particularly in point for the appellees. That was an action by the indorsee of a negotiable note against the maker. The defendant in that case offered to prove that the note was not intended by him or by the payee as a promissory note, but was given to and was received by the payee as a mere memorandum of the estimated value of the payee's interest in certain railroad bonds placed in the hands of the maker, and which were to be accounted for in the settlement of certain partnership affairs in which the maker and payee were interested; and that upon such settlement it would appear that the payee had received, prior to the giving of the note, more than his proper share of the partnership assets, and, therefore, was not entitled to claim anything in virtue of such memorandum. This court held the evidence inadmissible upon the ground that, by an alleged contemporaneous verbal agreement, it varied and contradicted the written contract of the parties. If that action had been brought by the original payee against the maker, and if the evidence above referred to had been excluded, a different question would have been presented. But, as we have seen, the issue in Burnes v. Scott was between the indorsee of a negotiable note and the maker. The rule is settled that a negotiable instrument, in the hands of an innocent holder for value, cannot be contradicted, to his prejudice, by evidence of an oral agreement or understanding between the original parties variant from the terms of their written contract.

"The authorities cited do not determine the present case. The issue here is between the original parties to the note. And the evidence offered by the appellant, and excluded by the court, did not in any true sense contradict the terms of the writing in suit, nor vary their legal import, but tended to show that the written instrument was never, in fact, delivered as a present contract, unconditionally binding upon the obligor according to its terms from the time of such delivery, but was left in the hands of Dulaney, to become an absolute obligation of the maker in the event of his electing, upon examination or investigation, to take the stipulated interest in the property in question. In other words, according to the evidence offered and excluded, the written instrument, upon which this suit is based, was not, except in a named contingency, to become a contract, or a promissory note which the payee could at any time rightfully transfer. Evidence of such an oral agreement would show that the contingency never happened, and would not be in contradiction of the writing. It would prove that there never was any concluded, binding contract entitling the party who claimed the benefit of it to enforce its stipulations. The exclusion of parol evidence of such an agreement could be justified only upon the ground that the mere possession of a written instrument, in form a promissory note, by the person named in it as payee, is conclusive of his right to hold it as the absolute obligation of the maker. While such possession is, undoubtedly—prima facie, indeed, should be deemed strong—evidence that the instrument came to the hands of the payee as an obligation of the maker, enforceable according to its legal import, it is open to the latter to prove the circumstances under which possession was acquired, and to show that there never was any complete, final delivery of the writing as the promissory note of the maker, payable at all events and according to its terms. The rule that excludes parol evidence in contradiction of a written agreement presupposes the existence in fact of such agreement at the time suit is brought. But the rule has no application if the writing was not delivered as a present contract. The authorities supporting these views are numerous, and to some of them it will be well to refer.

"In Ware v. Allen, 128 U. S. 591 [9 Sup. Ct. 174, 32 L. Ed. 563], which was an action upon a written instrument, the defense was that it was understood between the parties at the time the instrument was signed that it should not be of any effect unless in certain named contingencies, which, it was shown, never occurred. Mr. Justice Miller, speaking for this court, said: 'We are of opinion that this evidence shows that the contract upon which this suit is brought never went into effect; that the condition upon which it was to become operative never occurred, and that it is not a question of contradicting or varying a written instrument by parol testimony, but that it is one of that class of cases, well recognized in the law, by which an instrument, whether delivered to a third person as an escrow or to the obligee in it, is made to depend, as to its going into operation, upon events to occur or to be ascertained thereafter' —citing Pym v. Campbell, 6 El. & Bl. 370–373; Davies v. Jones, 16 C. B. 625; Wallis v. Littell, 11 C. B. N. S. 369; Wilson v. Powers, 131 Mass. 539; and Pawling v. United States, 8 U. S. (4 Cranch) 219 [2 L. Ed. 601].

"Pym v. Campbell, above cited, was an action upon an alleged agreement by the defendants to purchase from the plaintiff an interest in an invention of the latter. The defendants gave in evidence that, in the course of negotiations with the plaintiff, they got so far as to agree upon the price at which the invention should be purchased, if bought at all, and had appointed a meeting at which the plaintiff was to explain his invention to two engineers, when, if they approved, the machine would be purchased. At the appointed time the defendants and the two engineers attended, but the plaintiff did not come, and the engineers went away. Shortly after they were gone the plaintiff arrived. One of the engineers was found and expressed a favorable opinion. The other could not then be found. It was then proposed that, as the parties were together and might find it troublesome to meet again, a writing should be then

drawn up and signed, which, if the absent engineer approved the invention, should be the agreement; but if he did not approve it, should not be one. The absent engineer did not approve of the invention when he saw it, and the defendants contended that there was no bargain. The jury were directed that if it was agreed among the parties before the paper was signed that it should not operate as an agreement until the absent engineer approved of the invention, they should find for the defendants. A verdict was accordingly returned for the defendants. Upon a rule nisi for a new trial on the ground of misdirection, the cause was heard before the Court of Queen's Bench. Erle, J., said that, while the production of a paper purporting to be an agreement of a party, with his signature attached, affords a strong presumption that it is his written agreement, and if, in fact, he did sign the paper animo contrahendi, the terms contained in it were conclusive, and could not be varied by parol evidence; yet, if it were proved that in fact the paper was signed with the express intention that it should not be an agreement, the other party could not fix it as an agreement upon those so signing. 'The distinction in point of law,' he said, 'is that evidence to vary the terms of an agreement in writing is not admissible, but evidence to show that there is not an agreement at all is admissible.' Compton, J., said that he knew of no rule of law estopping parties from showing that a paper, purporting to be a signed agreement, was in fact signed on the terms that it should not be an agreement till money was paid or something else done. 'The parties,' he observed, 'may not vary a written agreement, but they may show that they never came to an agreement at all, and that the signed paper was never intended to be the record of the terms of the agreement; for they never had agreeing minds. Evidence to show that does not vary an agreement, and is admissible.' Lord Campbell, Ch. J.: 'I agree. No addition to or variation from the terms of a written contract can be made by parol; but in this case the defense was that there never was any agreement entered into. Evidence to that effect was admissible; and the evidence given in this case was overwhelming. It was proved in the most satisfactory manner that before the paper was signed it was explained to the plaintiff that the defendants did not intend the paper to be an agreement till Abernethie had been consulted, and found to approve of the invention; and that the paper was signed before he was seen only because it was not convenient to the defendants to remain. The plaintiff assented to this and received the writing on those terms.' That being proved, there was no agreement.' See, also, Lindley v. Lacey, 17 C. B. N. S. 585; Clever v. Kirkman, 33 L. T. N. S. 672; Gudgeon v. Besset, 6 El. & Bl. 986; 2 Taylor, Ev. (8th Ed.) § 1135.

"The case of Wilson v. Powers, above cited, was an action brought by the payee against the sureties in a promissory note. The defense was that the sureties had been discharged from liability by a written agreement between the payee and the principal, which was delivered to the principal, whereby the time of payment was extended. To this the plaintiff replied, and sustained his position by proof, that the writing signed by him, and which was relied upon as discharging the sureties, was delivered as a proposition merely, and upon the agreement that it should become binding only upon the assent of the sureties. The Supreme Judicial Court of Massachusetts said: 'The manual delivery of an instrument may always be proved to have been on a condition which has not been fulfilled, in order to avoid its effect. This is not to show any modification or alteration of the written agreement, but that it never became operative, and that its obligation never commenced.'

"In Benton v. Martin, 52 N. Y. 570, 574, the principle is thus stated: 'Instruments not under seal may be delivered to the one to whom upon their face they are made payable, or who by their terms is entitled to some interest or benefit under them, upon conditions, the observance of which is essential to their validity. And the annexing of such conditions to the delivery is not an oral contradiction of the written obligation, though negotiable, as between the parties to it, or others having notice. It needs a delivery to make the obligation operative at all, and the effect of the delivery and the extent of the operation of the instrument may be limited by the conditions with which delivery is made. And so, also, as between the original parties and others having notice, the want of consideration may be shown.' To the same effect are Juilliard v. Chaffee, 92 N. Y. 529, 535, and Reynolds v. Robinson, 110 N. Y. 654 [18 N. E. 127], in the latter of which it was said that the rule was now well established that 'parol evidence is admissible to show that a written paper which, in form, is a complete contract, of which there had been a manual tradition, was, nevertheless, not to become a binding contract until the performance of some condition precedent resting in parol.'

"The same doctrine was announced in McFarland v. Sikes, 54 Conn. 250 [7 Atl. 408, 1 Am. St. Rep. 111]. That was an action upon a note, which, the defendant alleged, had been executed and delivered to the plaintiff upon an agreement that it should be canceled under certain named circumstances, and in the event he demanded, by a named day, that it be returned to him. The trial court having ruled that the facts relied upon by the defendant did not constitute a defense, the Supreme Court of Errors of Connecticut, reversing the judgment, said: 'The error was in applying to the case the familiar and well-established rule that parol evidence is inadmissible to contradict or vary a written contract. A written contract must be in force as a binding obligation to make it subject to this rule. Such a contract cannot become a binding obligation until it has been delivered. Its delivery may be absolute or conditional. If the latter, then it does not become a binding obligation until the condition upon which its delivery depends has been fulfilled. If the payee of a note has it in his possession, that fact would be prima facie evidence that it had been delivered; but it would be only prima facie evidence. The fact could be shown to be otherwise and by parol evidence. Such parol evidence does not contradict the note or seek to vary its terms. It merely goes to the point of its nondelivery. The note in its terms is precisely what both the maker and the payee intended it to be. No one desires to vary its terms or to contradict them.'

"For the reasons stated, and without considering the case in other aspects, we are of opinion that it was error to exclude the evidence offered by the defendant tending to show that the writing sued on was not delivered to or received by Dulaney as the promissory note of the defendant, binding upon him as a present obligation, enforceable according to its terms, but was delivered to become an obligation of that character when, and not before, the defendant examined and, by working them, tested the mining properties purchased by the plaintiff, and elected to take the stipulated interest in them."

[2] The only difference between the case at bar and the case decided by the Supreme Court of the United States, and from which we have quoted, is that, by the parol agreement in that case, the right was reserved to the defendant to elect as to whether he would accept what would have been the sole consideration for the note and thereby render it effective as a legal obligation; while in this case the right of election was, by the

parol agreement, left with the plaintiff to determine whether or not he would deliver to the defendant that which would have been the sole and only consideration for the note. This difference is immaterial, and does not in any wise affect the principle announced and applied in that case. Furthermore, in this case as well as the one referred to, the parol evidence objected to was admissible for the purpose of showing that the alleged contract sued upon was without consideration. In this case the appellant claims that the note sued upon was given for the purpose of paying for certain bank stock sold by him to the appellee, while the appellee claims that the property referred to was never in fact sold to him, because the appellant, in the exercise of a right reserved to him by the parol agreement, had elected not to sell the property. It would seem that if the appellant, after the note was executed and delivered to him, retained possession of the property which constituted the sole consideration for the note, and thereafter asserted his right to decline to sell it to the appellee, and the latter acquiesced and permitted the former to retain it, there was, in law, a complete failure of consideration, regardless of whether the alleged right of election was based upon a previous agreement or not.

But, aside from the question of consideration, the weight of authority seems to support the proposition that parol evidence is admissible for the purpose of showing that a promissory note, though absolute in form, and delivered to the manual possession of the payee, was not intended to take effect as a binding obligation until the happening of a stipulated contingency. Tucker v. Tucker, 113 Ind. 272, 13 N. E. 710; Zimmerman v. Adee, 126 Ind. 15, 25 N. E. 828; Walters v. Walters, 34 N. C. 28, 55 Am. Dec. 401; Sutton v. Griebel, 118 Iowa, 106, 91 N. W. 895; Howard v. Stratton, 64 Cal. 487, 2 Pac. 263; Lyons v. Stills, 97 Tenn. 514, 37 S. W. 280; Watson v. Rice, 166 S. W. 106; Nelson v. Boggs, 177 S. W. 1005. The last two cases were decided by other Courts of Civil Appeals of this state. We also refer to Hughes v. Crooker, 148 N. C. 318, 62 S. E. 429, 128 Am. St. Rep. 606, and the valuable note which follows that case. After stating the general rule, the author of the note says:

"While the rule above stated is so universally upheld as to be no longer a moot question, there are many exceptions to it, some of which are quite as important as the rule itself and seem to be quite as well settled. One of these exceptions or qualifications is, that conditions relating to the delivery of a note or bill may be shown by parol evidence. This exceptional rule has been very clearly stated by the Supreme Courts of Massachusetts and New York, thus: 'The manual delivery of an instrument may always be proved to have been on a condition which has not been fulfilled, in order to avoid its effect.' Wilson v. Powers, 131 Mass. 529; and 'Parol evidence is admissible to show that a written paper which in form is a complete contract, of which there has been a manual tradi-

tion, was nevertheless not to become a binding contract until the performance of some condition resting in parol.' Reynolds v. Robinson, 110 N. Y. 654, 18 N. E. 127. The principle upon which this exception to the general rule rests, as appears from the principal case, Hughes v. Crooker, 148 N. C. 318, ante, p. 606, 62 S. E. 429, 128 Am. St. Rep. 606, that parol evidence showing contemporaneous oral agreements relating to the delivery of a note does not contradict or vary the terms of the note, but only goes to show that the note never had any vitality as a contract, and this principle has been several times sanctioned by the Supreme Court of the United States."

We have considered all the questions presented in appellant's brief, and have reached the conclusion that no error has been shown, and the judgment is affirmed.

Affirmed.