## GATEWAY PRODUCE CO. v. FARRIER BROS.

(Circuit Court of Appeals, Fifth Circuit. November 23, 1920.)

No. 3590.

**1. Sales ☞88—Jury question regarding effective date of instrument.**

Evidence that the parties agreed a written contract for the sale of peaches should not be effective, unless defendant seller was able to secure the peaches from a third party, which he was unable to do, etc., *held* to make a jury question whether the instrument sued on became effective as a contract.

**2. Contracts ☞221(1)—Effective date may be dependent upon future act.**

Where the parties agreed that a written instrument should not become effective until a certain event occurred, the instrument is not binding as a contract prior to the occurrence of such event, although in form a complete contract, and possession is exchanged under it.

**3. Evidence ☞444(2)—Effective date of contract, dependent on future event, may be proved by parol.**

That parties who signed a written instrument agreed it should not become effective as a contract prior to the occurrence of a future event may be proved by parol.

In error to the District Court of the United States for the Eastern District of Texas; W. Lee Estes, Judge.

Action by the Gateway Produce Company against Farrier Bros. Judgment for defendants, and plaintiff brings error. Affirmed.

J. Q. Mahaffey, of Texarkana, Tex., for plaintiff in error.

A. L. Burford, of Texarkana, Tex., and Joseph Milton Burford, of Mt. Pleasant, Tex., for defendants in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This was an action by the plaintiff in error, Gateway Produce Company, to recover damages for the alleged breach by the defendants in error, Farrier Bros., of an alleged contract evidenced by a written instrument of which the following is a copy:

"Omaha, Texas, 5—30—1918.

"In consideration of $1.00 in hand paid. This contract between Gateway Produce Co., of Texarkana, Ark., and Farrier Bros., of Omaha, Tex. Farrier Bros. agree to sell and deliver to Gateway Produce Co. 35 cars of No. 1 Elberta peaches of No. 1 quality, inspected by state inspector, and loaded on cars at Mt. Vernon, Tex. Price to be paid by Gateway Produce Co. to Farrier Bros. is $1.35 per bushel cash on track. A forfeit of $2,500 from

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

each of said Farrier Bros., and Gateway Produce Co., made payable to M. & P. Bank of Texarkana, Ark., in order that said Gateway Produce Co. may take said peaches and said Farrier Bros. may deliver said peaches during the season 1918.                              [Signed]   Farrier Bros.,

"H. M. Farrier.

"Gateway Prod. Co.,

"By J. A. Robison."

The respective parties are herein referred to as the plaintiff and the defendants. The defendants put in issue the alleged making of the contract sued on, and filed pleas to the effect that, if the alleged contract was made, it was abrogated and canceled by the parties thereto, and that the instrument sued on was signed by the respective parties in duplicate; one of the copies being handed to the plaintiff's representative, with the understanding and agreement that it was not to be effective if the plaintiff did not buy the peaches called for from one C. S. Martin, who resided at Mt. Vernon, Tex., and that, if such purchase was made from Martin, the representatives of the plaintiff and of the defendants and said Martin were to go together to Texarkana, where a sale contract was to be made by Martin, and the plaintiff and the defendants were to make the deposit called for by the instrument.

In the trial evidence was adduced tending to prove the following: Early in the afternoon of May 30, 1918, J. A. Robison, an officer of the plaintiff company, went to the place of business of the defendants at Omaha, Tex., and made it known to H. M. Farrier, one of the defendants, that the plaintiff wanted to buy some peaches. Farrier stated, that he did not have any peaches, but that his firm was the sales agent for the Mt. Vernon peaches; that on the day before one Martin had telephoned to him from Mt. Vernon, offering 35 cars of peaches, at $1.25 per bushel; and that possibly he (Farrier) could get those peaches for the plaintiff at 10 cents a bushel profit. After Robison had assented to that suggestion, Farrier called Mr. Martin over the telephone, and the latter stated that he had not sold the peaches, but had that day offered them to another person; that Farrier could get them if they were not taken by the other person, to whom they had been offered; and that he (Martin) was going down on that afternoon's train to Texarkana, and suggested that Farrier go to Texarkana on the same train and close the matter up.

Thereupon Farrier and Robison agreed on the terms of sale of the peaches the former expected to get from Martin, and that they (Farrier and Robison) would go to Texarkana on the same train on which Martin was going. Upon Robison suggesting that it would be so late when they got to Texarkana that he (Robison) probably could not get a stenographer there, the instrument sued on was dictated, typewritten in duplicate, and signed, and one of the copies was handed to Robison, with the understanding and agreement between him and Farrier that the contract which the instrument was to evidence was not to be effective until Farrier got Martin's contract for the sale of the peaches and the forfeit was put up in the bank of Texarkana. Immediately after this occurred, Robison left Omaha to go to Naples, a place 4½ miles from Omaha, and a railroad station between Omaha and Texarkana.

When Farrier went to take the train for Texarkana, Martin, who was on that train, called him to a car window and told him that just before he (Martin) got on the train at Mt. Vernon he received a telegram of acceptance from the person to whom he had offered the peaches he had for sale, and that consequently Farrier could not get the peaches about which they had talked over the telephone. Thereupon Farrier returned to his place of business, and by telephone communicated with Robison at Naples, telling him of Martin's sale of the peaches, that therefore he (Farrier) would not be on the train, and requesting Robison to return by mail the contract that had been prepared, or destroy it, to which request Robison replied by saying, "I will."

There was evidence in conflict with material parts of that above set out. There was no controversy about the facts that the peaches called for by the instrument sued on were not furnished by the defendants to the plaintiff, and that the defendants did not get a contract from Martin for the sale of the latter's peaches.

Exceptions were reserved to rulings on objections to evidence, and to the part of the court's charge to the jury which was to the effect that they should return a verdict in favor of the defendants, if they found from the evidence that at the time the instrument sued on was signed and a copy of it was given to the plaintiff it was not intended by the parties then to be a contract, and was not to become effective or to be a contract until Martin had made a contract for a sale of his peaches to the defendants. The court by its charge plainly instructed the jury to the effect that under a phase of the evidence adduced it was permissible for them to find that the instrument sued on was executed and delivered as a contract, and that if they so found they should return a verdict in favor of the plaintiff.

[1-3] The above set out phase of the evidence fully justified the court in submitting to the jury the question whether the instrument sued on did or did not become effective as a contract. Where a written instrument, though in form it is a complete contract, and though possession of it is given or exchanged by the parties who sign it, is, when it is signed and possession of it is given, by agreement of the parties made to depend, as to its going into operation, on an event thereafter to occur, it is not effective or binding as a contract prior to the occurrence of such event, and the fact that the parties who signed a written instrument so agreed may be proved by parol evidence. Ware v. Allen, 128 U. S. 590, 9 Sup. Ct. 174, 32 L. Ed. 563; Burke v. Dulaney, 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698; 3 Jones, Commentaries on Evidence, § 471. The rulings of the court which are complained of were in conformity with the above-stated well-settled law. In our opinion there is no merit in any assignment of error which is insisted on.

The judgment is affirmed.