BEHRE et al. v. ANCHOR INS. CO. OF NEW YORK.

(Circuit Court of Appeals, Second Circuit. November 1, 1926.)

No. 42.

1. War ⬥12.

Assignment by German firm of all rights in United States insurance agency *held*, under evidence, not to have been entered into merely as a sham during the war period, so as to be avoided to enable assignors to recover funds seized by Alien Property Custodian, under Trading with the Enemy Act Oct. 6, 1917 (Comp. St. § 3115½a et seq.), and subsequently paid to successor of insurance company.

2. Contracts ⬥153.

Where instrument is susceptible of interpretation as lawful, binding, and effective contract, such construction will be preferred to contrary construction.

3. Assignments ⬥137.

One seeking to destroy effective terms of assignment regular on its face has burden of proving such by clear, positive, and convincing evidence.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Ernst Behre and others to recover from the Anchor Insurance Company of New York commissions due them as agents in the defendant's insurance business, and to pay over to them such moneys as were seized and paid over to it by the Alien Property Custodian. Judgment for defendant. Plaintiffs appeal. Affirmed.

William B. Devoe, of New York City (Hartwell Cabell and Milton B. Ignatius, both of New York City, of counsel), for appellants.

Barker, Donahue, Anderson & Wylie, of New York City (Paul Bonynge and Wendell P. Barker, both of New York City, of counsel), for appellee.

Before MANTON, HAND, and MACK, Circuit Judges.

MANTON, Circuit Judge. This suit in equity by the appellants, German citizens, seeks to recover for alleged performance of an agency contract of insurance in the United States. The Jakor Insurance Company, of Moscow, Russia, had an insurance business in the United States prior to the war. On October 30, 1908, it contracted with H. Mutzenbecher, Jr., a copartnership, to act as its agent in its United States business. By the terms of this agreement the firm was granted exclusive representation with the companies domiciled in the United States, and it was to receive 3½ per cent. of the net premiums, plus a contingent share in the annual net profits. The action is to recover for commissions earned and held in a reserve fund, which was afterwards seized by the Alien Property Custodian and later paid to the appellee. The equitable relief sought is predicated upon the theory that an accounting should be had and that the examination of a long account is involved.

The theory of the claim, as alleged in the bill of complaint, is that the appellants were employed by the Jakor Company to transact for it and in its name insurance business with various companies outside of Russia. It alleges that Mutzenbecher & Ballard, a New York corporation, was its subagent in the United States; that full commissions were paid by the Jakor Company to the appellants up to the beginning of the World War, and thereafter such commissions were paid by deducting the same from the American premium collections, and that such deductions did not equal the full amount of the earned commissions; that after the passage of the Trading with the Enemy Act of October 6, 1917 (Comp. St. § 3115½a et seq.), there were further accumulations in favor of the appellants, which were under the control of the Jakor Company and Mutzenbecher & Ballard. They alleged the performance of the contract on the part of the appellants, except as to maping and retrocessions at the close of the year 1917, and rendering accounts, the performance of which conditions was waived and excused by the Jakor Company, and is claimed to have been accomplished through Mutzenbecher & Ballard. The amount sued for is $213,800. The other relief sought is for an accounting of commissions earned since 1914 and in the future. The material allegations of the bill of complaint are put in issue by the denial of the appellee.

In February, 1922, the appellee purchased the American branch and assets of the Jakor Company for a sufficient consideration and it has succeeded to the rights and obligations of that company. The corporation Mutzenbecher & Ballard was organized solely for the purpose of taking over the management of this United States agency. The German firm of H. Mutzenbecher, Jr., owned 80 per cent. of the stock of Mutzenbecher & Ballard and nominated and controlled four out of five directors. Ballard owned 20 per cent. of the stock and was a director. At first, the 3½ per cent. commission was paid direct from Moscow to H. Mutzenbecher, Jr., in Hamburg, Germany, and H. Mutzenbecher, Jr., in turn paid ¾ per cent. plus expenses to Mut-

zenbecher & Ballard. The Jakor Company was not a party to the details of this agency contract. For six years after 1908, when these relations were first established with H. Mutzenbecher, Jr., it did an extensive business in fire insurance in the United States. When the World War broke out in 1914, remittances and commissions from the Moscow office to H. Mutzenbecher, Jr., in Germany ceased. During the early years of the war, the effectiveness of the British blockade and censorship led to the inauguration of a clandestine correspondence through one Paul Clausen, a neutral agent in Copenhagen. The declaration of war between Russia and Germany, if it did not, in law, end the contractual relations between the subjects of those countries, made it difficult and embarrassing for commercial transactions between nationals of those belligerents to be carried out. In the fall of 1915, the officials of the Jakor Company determined that further representation of the company by a German firm was undesirable, and it was proposed that the contract between H. Mutzenbecher, Jr., and the Jakor Company be assigned to Mutzenbecher & Ballard. This was done under an instrument dated November 23–December 5, 1915, and became effective January 1, 1916. It was signed by H. Mutzenbecher, Jr., two directors of the Jakor Company, and by Mutzenbecher & Ballard, acting through Mr. Behre, its vice president. It reads as follows:

"We, the undersigned, the Jakor Insurance Company, of Moscow, parties of the first part, and the firm of H. Mutzenbecher, Jr., of Hamburg, parties of the second part, mutually consent to transfer all powers, obligations, and rights contained in our United States agency agreement, signed in Moscow, the 17/30 October, 1908, to the firm of Messrs. Mutzenbecher & Ballard, Inc., 80 Maiden Lane, New York, which firm agrees to fulfill such engagements as formerly undertaken by Messrs. Mutzenbecher, Jr., of Hamburg. This alteration is to take place on and after the 1st of January, 1916, new style."

[1] It is conceded by the appellants that, if this assignment was genuine and valid, it is an answer to the claims advanced in this suit. The agreement is attacked upon the ground that it was a sham, and executed by all for the purpose of deceiving the Russian authorities, and was not intended to have binding effect. Upon the other hand, the appellee asserts it was in all respects a bona fide assignment; that there was no intent or purpose to deceive; that the parties acted under its binding terms in their business relations thereafter.

Supporting this claim that the addendum was colorable only, one of the appellants testified that his partner, since deceased, representing H. Mutzenbecher, Jr., had told him that he interviewed a Mr. Brown, who was the manager of the foreign department of the Jakor Company at Copenhagen, in January, 1916, and that he asked Mr. Brown for information as to the meaning of the letters regarding the agency contract and the addendum. Brown answered that there would be no change in the relations between the Jakor Company and the Mutzenbecher firm, but that, because of the new Russian law about trading with the enemy, the Jakor Company would like to have the addendum signed, and that the old relations between the Jakor Company and H. Mutzenbecher, Jr., would always remain. Brown was not called as a witness by either side. This testimony was admitted below, with a statement that it was incompetent, as it was. But this, together with the letters offered, which passed between the appellants and the Jakor Company subsequent to January 1, 1916, showing a continued business relationship between the appellants and Mutzenbecher & Ballard, are said to be sufficient in bearing the burden of establishing that the assignment of the contract referred to was colorable only.

The letters passing between the Jakor Company's agent at Petrograd and H. Mutzenbecher, Jr., are referred to by the appellants, and it is argued they contain admissions or intimations that the transaction was colorable only. They were not binding upon the Jakor Company. Indeed, on November 16, 1915, H. Mutzenbecher, Jr., wrote in reply to one of these letters that they wished to advise the Petrograd agents that H. Mutzenbecher, Jr., consented to the assignment of the agency contract with Jakor & Co. for the American business to the firm of Mutzenbecher & Ballard, and said: "I assume it is understood that after the matter is settled in this way that Jakor will not proceed to a cancellation of the agreement, or otherwise this assignment will have no sense." This indicated a recognition that there would be a cancellation of the contract, and a willingness, under the circumstances, to consent thereto, without any assurance from Jakor that the whole agreement was a mere pretense.

The letters written subsequent to January 1, 1916, in substance told that Mutzenbecher & Ballard, Inc., was the agent for the appellants, and the communications passing between the two had little binding effect upon the appellee. There was reason why such correspondence should take place between H.

Mutzenbecher, Jr., and Mutzenbecher & Ballard, Inc., because of their relation as principal and agent. The assignment of the agency contract to Mutzenbecher & Ballard, Inc., did not alter this relationship, or the right of H. Mutzenbecher, Jr., as a stockholder, or other parties as directors, of Mutzenbecher & Ballard, Inc., to participate in the earnings. Correspondence between them on their business was to be expected. On January 12, 1916, H. Mutzenbecher, Jr., wrote to Ballard, through Paul Clausen, apprising the latter of the transfer of the agency in unmistakable terms. The letters which passed between Jakor & Co. and Clausen after January 1, 1916, were few in number and are of little importance. But these claims are fully answered by the evidence in this record, from which the following facts are clearly established:

A few days after the effective date of the assignment to Mutzenbecher & Ballard, Inc., a British subject was elected general manager of Jakor & Co., and instructions were given at a meeting of the directors to discontinue enemy dealings. On February 2, 1916, Jakor & Co. wrote Mutzenbecher & Ballard, directing it to deduct commissions of 4 per cent. and remit one-fourth to the home office in Moscow. The agents' compensation was thus reduced to 3 per cent., and in explanation it was said that certain statistical work theretofore done by Mutzenbecher, Jr., in Hamburg would no longer be performed there, and the reduction in compensation would be fair. All business thereafter, it was agreed, would be centralized in one office. By letter and cable the New York office was enjoined from making payments to Clausen in Copenhagen on account of H. Mutzenbecher, Jr. Mutzenbecher & Ballard complied with these demands, and no subsequent payments were made to H. Mutzenbecher, Jr., except one made by mistake.

In July, 1916, Mutzenbecher & Ballard wrote Jakor & Co., stating that the conditions of the agency business would not warrant a deduction as large as 4 per cent., and they were accordingly charging but 3$^1$/$_3$ per cent., this being the substantial equivalent of the interest of the American investments of the company, and that of such deduction 2½ per cent. was to be kept as their own compensation and the remaining $^5$/$_6$ per cent. was to be returned to the home office. This agreement continued in force until July, 1917, when Jakor & Co. instructed its agents to discontinue further remittances to the home office, owing to the decline of the ruble, and to accumulate this $^5$/$_6$ per cent. in New York.

It also appears that, at the outbreak of the World War, the New York insurance department forbade all home office remittances, and there was therefore no method by which Jakor & Co. could obtain moneys from the American branch. The record discloses that, prior to the execution of the contract between Jakor & Co. and H. Mutzenbecher, Jr., there was considerable correspondence between the parties as the necessities of business required. After January, 1916, this correspondence was insignificant. But there was some referred to above between H. Mutzenbecher, Jr., and Mutzenbecher & Ballard.

In October, 1916, by the Imperial Russian ukase, all existing contracts between Russian nationals and enemies of that country were abrogated, and penalties were imposed for violations of the law. On October 6, 1917, the Trading with the Enemy Act was passed in the United States. That enactment caused investigation to be made by the Alien Property Custodian as to the enemy-owned stock in Mutzenbecher & Ballard, and eventually this stock was seized. Thereafter the firm name of Mutzenbecher & Ballard was changed to Sumner Ballard & Co., Inc. After an examination of the books and correspondence of Sumner Ballard & Co., Inc., by the Alien Property Custodian, wherein it appeared that Sumner Ballard & Co., Inc., were charging the American premium collections with a commission of 3$^1$/$_3$ per cent., of which it was retaining 2½ per cent. and setting up five-sixths of 1 per cent. as a reserve for Jakor & Co., he seized the $^5$/$_6$ per cent., on the theory that it was a mere method of deception, and that in truth and fact this reserve was being accumulated for the benefit of H. Mutzenbecher, Jr. He also determined that Sumner Ballard & Co., Inc., must charge the Jakor Company business an additional $^1$/$_6$ per cent. retroactive to January 1, 1916, and required the payment of this additional sum to him.

The contract in suit was seized June 27, 1919. Thereafter the Jakor Company was licensed to transact business as a foreign insurance company in this country upon showing its immunity from enemy contact. In March, 1919, the Jakor Company canceled the agency contract of Sumner Ballard & Co., Inc., and ordered the corporation to turn over the business and records of the American branch of Jakor & Co. to another insurance agency corporation. In July, 1920, Sumner Ballard & Co. instituted a suit against Jakor & Co. for commissions alleged to be due at the rate of 3½ per cent. This suit was settled by the payment of $13,000 to it by Jakor & Co. and a general release given therefor.

After claims were presented against the Alien Property Custodian, and after due consideration had thereon, on recommendation of the Attorney General, the reserve thus accumulated was paid to the appellee as successor in interest of Jakor & Co. On the occasion of the presentation of this claim, H. Mutzenbecher, Jr., signed a statement which was filed with the United States Treasury Department, upholding as bona fide the assignment of November 23–December 6, 1916. From time to time the controlling interest, or at least the management, of Jakor & Co. changed. At first it was the hands of a British subject, next a Russian subject, and then a Norwegian subject. Each of these was proally and gave directions that the business relations with the German firm should be severed. All the business done by them was through the American agency of Mutzenbecher & Ballard. The Russian government made its decree forbidding commercial intercourse, and there was every reason to expect that the Russian corporation would not violate the law of that country. This government, after investigation, became satisfied that Jakor & Co. was free from enemy connections, and issued a license for it to do business in the United States. On September 21, 1918, Sumner Ballard & Co., Inc., wrote to the Alien Property Custodian as to this reserve fund, saying that this fund was the property of the Jakor Insurance Company and not the property of an enemy company. They also stated that they had received a letter from the representative of H. Mutzenbecher, Jr., disclaiming knowledge of the purpose of the reserve.

[2, 3] These facts, which we think abundantly established by the evidence, completely answer the contention that the assignment was entered into merely for the purpose of deception, and may now be voided by the appellants in their endeavor to recover this reserve fund. Where the instrument brought into question is susceptible of an interpretation of a lawful, binding, and effective contract, such a construction will be preferred to an interpretation that it is not binding and unlawful. Hobbs v. McLean, 117 U. S. 576, 6 S. Ct. 870, 29 L. Ed. 940; D. L. & W. R. Co. v. Kutter, 147 F. 62, 77 C. C. A. 315. The assignment is unambiguous in phrase and regular upon its face, and the appellants, in attempting to destroy its effective terms, must do so bearing the burden by clear, positive, and convincing evidence. Howland v. Blake, 97 U. S. 624, 24 L. Ed. 1027; Moore v. Crawford, 130 U. S. 122, 9 S. Ct. 447, 32 L. Ed. 878; Burke v. Dulaney, 153 U. S. 228, 14 S. Ct. 816, 38 L. Ed. 698. In this it has failed.

In Second Russian Ins. Co. v. Miller (C. C. A.) 297 F. 404, we considered a transaction of this kind, but held it to be a sham and fraud. The evidence strongly persuaded us to that result. It differs materially in its convincing proof from this case.

Other defenses to appellant's recovery are presented, but, since we have concluded there was a bona fide assignment of the agency contract to Mutzenbecher & Ballard, it is unnecessary to consider them.

Order affirmed.