## AMERICAN SURETY CO. OF NEW YORK v. WHITEHEAD.

### No. 10606.

Court of Civil Appeals of Texas. Dallas. May 15, 1930.

Rehearing Denied June 14, 1930.

Thompson & Barwiso and Hugh B. Smith, both of Fort Worth, for appellant.

W. D. Adamson and J. E. Whitehead, both of Dallas, for appellee.

VAUGHAN, J.

On February 9, 1925, American Surety Company of New York, appellant, instituted this suit against the Osage Oil & Refining Company and appellee J. E. Whitehead, as defendants, to recover against them as indemnitors on an alleged contract of indemnity executed February 23, 1922. After appellee had answered, appellant, on May 5, 1926, filed its first amended original petition by which, in addition to the alleged contract of indemnity dated February 23, 1922, declared upon as a contract of indemnity an instrument of date June 24, 1920, containing, among other things, the following provisions material to the determination of this appeal:

'Whereas, the undersigned (hereinafter called the 'Indemnitor') have heretofore required and may hereafter require suretyship upon certain obligations of suretyship on behalf of the undersigned, or of some of them, or of some other person or corporation, and have applied and may hereafter apply to the American Surety Company of New York (hereinafter called the 'Surety') to execute such instruments, as Surety. Therefore, the undersigned do hereby, jointly and severally, undertake and agree:

"Second: That the Indemnitor will perform all the conditions of each said bond, and any and all renewals and extensions thereof, and will at all times indemnify and save the Surety harmless from and against every claim, demand, liability, cost, charge, counsel fee (including fees for special counsel whenever by the Surety deemed necessary), expense, suit, order, judgment and adjudication whatsoever, and will place the Surety in funds to meet the same before it shall be required to make payment, and in case the Indemnitor requests the Surety to join in the prosecution or defense of any legal proceeding, the Indemnitor will, on demand of the Surety, place it in funds sufficient to defray all expenses and all judgments that may be rendered therein. The Indemnitor will not ask or require the Surety to remove or join in any application for the removal of any proceeding from a State court to a federal court in any state where such action would in any way affect the surety's right to transact business.

"Seventh: That the voucher or other evidence of any payment made by the surety by reason of such suretyship, or renewal or extension thereof shall be prima facie evidence of such payment and the propriety thereof, and of the liability of the Indemnitor therefor to the Surety."

The count upon instrument dated February 23, 1922, was abandoned.

Said instrument of date June 24, 1920, will hereinafter be referred to as the indemnity proposal, the Osage Oil & Refining Company as the oil company. The issues on which this cause was tried are reflected in the special issues submitted to the jury, viz.:

"No. 1: Do you find and believe from a preponderance of the evidence, that it was contemplated by any agent of the plaintiff herein, the American Surety Company of New York, at the time of the signing of the injunction bond, on to wit: July 9, 1920, which was filed in the case of Osage Oil & Refining Company vs. W. R. Chandler, and others, in the United States District Court for the Southern District of New York, that the plaintiff, American Surety Company of New York, should be protected by the defendant J. E. Whitehead, individually, on the indemnity contract in question, dated June 24, 1920?

"No. 2: Do you find and believe from a preponderance of the evidence, that it was contemplated by the defendant, J. E. Whitehead, at the time the injunction bond referred to in Special Issue No. 1 was filed, that the plaintiff, American Surety Company, New York, should be protected by the said defend-

ant J. E. Whitehead, individually, on the indemnity contract in question in this suit, dated June 24, 1920?

"No. 3: Do you find and believe from a preponderance of the evidence, that the plaintiff, American Surety Company of New York, ever notified the defendant, J. E. Whitehead, that it looked to him under said indemnity contract in question herein, dated towit: June 24, 1920, on the injunction bond referred to in Special Issue No. 1, dated July 9, 1920, filed in the case of Osage Oil & Refining Company vs. W. R. Chandler, et al?

"No. 4: Do you find and believe from a preponderance of the evidence, that the defendant, J. E. Whitehead, knew that the plaintiff, American Surety Company of New York, was looking to him, if you find and believe that it was looking to him, under said indemnity contract, dated June 24, 1920, on the injunction bond filed in the case of Osage Oil & Refining Company vs. W. R. Chandler, et al?

"No. 5: From the preponderance of the evidence before you, what sum of money, if any, do you find and believe will be a reasonable attorneys fee for the plaintiff herein, the American Surety Company of New York, for the filing and prosecution of this law suit in question?

And issue No. 2, requested by appellant, as follows: "No. 2: Has there been any material alteration in the contract of indemnity dated June 24, 1920, since its execution and delivery to the plaintiff?"

The jury answered said issues as follows: No. 1, "Yes"; No. 2, "No"; No. 3, "No"; No. 4, "Yes"; No. 5, $350; and No. 2 requested by appellant, "No." Appellee's motion for judgment to be rendered in his favor on the verdict of the jury was granted, and judgment entered in favor of appellee that appellant take nothing by its suit against him, and, as per peremptory instruction, in favor of appellant against the oil company for the sum of $3,718.68 and all court costs. In support of its appeal, appellant presents several propositions, neither of which will be stated in hæc verba, as the effect of each will be revealed in a general discussion of this appeal.

From the statement of facts we find the following material facts to have been established, without conflict in the evidence adduced by the litigants, viz.:

That some time prior to June 24, 1920, appellee, president of and acting for the oil company, communicated with an officer of appellant corporation in reference to securing appellant to become surety on certain bonds the oil company would be required to execute. That, as the result of said conference, appellant furnished one of its printed forms to appellee to be used by the oil company in making known in a formal way its need of and desire for such suretyship. That said form was so used and became the indemnity proposal, on which appellant based its right to recover in this suit. That, after the signing of the indemnity proposal, by the oil company and appellee, appellee delivered it in person at appellant's office. That there was attached to said instrument when delivered to appellant two statements, viz. a financial statement and a description of the bonds required, namely, fidelity bonds, with the names of the individuals for whom such bonds were to be executed, they being in the service of the oil company, as stock salesmen in the state of North Carolina. That, in order to have appellant sign such bonds as surety, it was necessary that each salesman make individual application for that service to appellant. That, at the time the indemnity proposal with said statements attached was delivered, appellee stated to the person receiving same for and representing appellant that said statements were attached, and that the salesmen's bonds described in the exhibit attached to the indemnity proposal were all of the bonds and the only ones wanted by the oil company and appellee.

In reference to this transaction, appellee testified: "In this conversation with the representative of the American Surety Company, something was said about the limit of liability under the bonds that I desired at the time. I told him that these salesmen's bonds were the only bonds we would want, and I wanted to fix everything up so the salesmen could get the bonds quick upon application, and I wanted him to notify his agent in Raleigh, North Carolina so there would be no delay. I showed him the Statutes of North Carolina with reference to the limit of liability under the bonds. Prior to the time I executed this contract, (referring to instrument of date, June 24, 1920) I saw this gentleman that I later delivered the signed contract to, (referring to said instrument of date, June 24, 1920) and he furnished me with some blanks on which to make a financial statement, and told me to furnish a description of the bonds as required, and to tell my men to make application for the bonds desired. Also he requested me to write him a letter. I prepared the letter at the instance of this executive to whom I delivered the papers. The letter I wrote to the American Surety Company at the instance of this executive whom I do not know, is as follows: 'This is to bring under the General Contract of Indemnity already executed by us for your protection, dated June 24, 1920, all your suretyship heretofore executed or that may be hereafter executed in connection with applications for State or other authority licensing employees, agents or representatives to sell stocks, bonds or other obligations of Osage Oil & Refining Company; and we hereby acknowledge a beneficial interest in such suretyship and the purpose it furthers, and agree that all our

promises and obligations for your protection or remuneration in said General Contract of Indemnity covered shall apply as fully as in the case of suretyship under said General Contract in the name of Osage Oil & Refining Company itself as principal. [Signed] Osage Oil & Refining Company [L. S.], By J. E. Whitehead, President (and) J. E. Whitehead, Individually."

That, on the delivery of said indemnity proposal and letter, appellant issued bonds to the salesmen of the oil company in North Carolina. No loss occurred under said bonds.

Referring to the indemnity proposal, appellee testified: "This application and this instrument (referring to the bond contract) was for the purpose of securing the Fidelity bonds and for no other purpose. The Osage Oil & Refining Company had in contemplation no other bonds at the time that application and the letter above referred to were delivered to the American Surety Company."

As to the execution of the injunction bond involved in this suit, appellee testified: "I, as president of the Osage Oil & Refining Company, made application for the injunction bond. I went to see the same man that I talked with on the first occasion about the salesmen's bonds and he gave me an application, the regular form of the company. I signed that application 'Osage Oil & Refining Company' by myself as president. I did not sign it individually."

That on July 9, 1920, an injunction bond was executed by the oil company as principal and appellant as surety, in equity cause No. 18—175, styled Osage Oil & Refining Company, Plaintiff, v. W. R. Chandler and Alice E. Haller, Defendants, in the United States District Court, Southern District of New York, in the sum of $3,000, payable to W. R. Chandler, one of the defendants in said cause, and conditioned as above stated. That said equity cause was filed June 18, 1920. That said bond was executed by appellant as surety on application made to it by the oil company for that purpose July 9, 1920.

In reference to the filing of said suit and the execution of the injunction bond, appellee, without contradiction, testified: "At the time the suit above referred to was filed and a temporary writ of injunction issued we put up a cash bond. Another hearing on the matter was had on July 16, and at that time the bond was increased to $3,000.00, and we drew down our cash bond and executed the surety bond. It was at that time that we were required to make an additional bond. At the time we signed that contract of indemnity we did not know we were going to need this injunction bond."

That the application to appellant to become surety on the injunction bond here involved was signed by the oil company by appellee, its president, and the injunction bond was executed by the Oil Company by J. E. Whitehead, president, and by appellant as surety. That judgment was rendered in said equity cause on August 18, 1922, in favor of said W. R. Chandler, against the oil company as principal and appellant as surety for the sum of $2,356.90. That said judgment was discharged by appellant paying on the 27th day of February, 1923, the sum of $2,484.16, said amount covering the principal, interest, and costs adjudged as a liability to be paid by appellant as surety on said bond. That no part of the money so paid by appellant had been repaid by either appellee or the oil company.

In addition to the above findings, the answers of the jury to special issues Nos. 2, 3, and 5, contained in the court's charge, and No. 2, requested by appellee, being supported by evidence, are adopted as findings by this court. The answers to the other special issues, not being supported by evidence of any probative effect, are on that ground not adopted by this court as findings of fact.

■■ The date fixed as July 16th, of the order entered, increasing the injunction bond to $3,000, cannot be correct, and no doubt is a typographical error; in that the bond was applied for and executed on July 9th; therefore it is apparent that the order was entered prior to the 9th and probably was on the 6th day of July, instead of the 16th, and under the record we are justified in so concluding. Within and by its own terms, the effect of the indemnity proposal must be determined. In what respect was the attitude that the parties occupied one to the other prior to the execution of the indemnity proposal changed by its execution, and, if changed, what obligation resulted therefrom requiring the performance of any act or duty by one to the other? Neither the oil company nor appellee were, by the terms of said instrument, obligated to apply to appellant to become surety upon any bond or obligation of suretyship that they or either one of them might be required to execute. Nor was the appellant obligated thereby to the oil company and appellee, or either of them, to become such surety for them, or either of them, on application for such suretyship being made to appellant. The signing by the oil company and appellee of the indemnity proposal and the delivery of same to appellant left said parties in the same position they theretofore occupied one to the other.

The language of said indemnity proposal does not in any respect evidence a meeting of the minds of the parties thereto in an agreement on the part of the oil company and appellee, or either of them, to apply to appellant for suretyship for their benefit or either of them, or that appellant, on the making of such an application by the oil company and appellee, or either of them, would become

such surety. That the establishment of such relationship by said parties was alone what was desired to be accomplished, and that such relationship was not created by said instrument and could only be through an accompanying or a subsequent binding agreement made by and between said parties based upon and within the terms of said indemnity proposal, is self-evident from its language.

Appellee, as a defense to appellant's suit, urged, and by uncontradicted testimony established, that said indemnity proposal was conditionally delivered to appellant—the condition being that the suretyship of appellant was only sought for certain stock salesmen representing the oil company in the state of North Carolina and for no other purpose; that, prior to and at the time said instrument was delivered, appellant had knowledge of the fact that same was delivered conditionally, as shown by the undisputed testimony of appellee, herein quoted, in reference to what was said and the physical condition of said indemnity proposal before and at the time of such delivery.

■ Appellant objected to the evidence of appellee introduced in support of this defense, on the ground that, same being parole evidence, was in conflict with and would vary or contradict the terms of a written instrument, to wit, said indemnity proposal. If the execution of the indemnity proposal and the injunction bond involved in this suit had been a part of the one and the same transaction, or executed simultaneously, so as to have constituted a part of the same transaction, then the overruling of appellant's objection would have been reversible error. Without conflict, it was established that the indemnity proposal was delivered to appellant on its date, June 24, 1920; that its delivery was conditional or limited in its operation to certain bonds to be executed for the benefit of stock salesmen representing appellee in the state of North Carolina; that said fidelity bonds were duly executed by stock salesmen with appellant as surety, and are not in any respect involved in this suit; that on July 9, 1920, under a spearate application therefor, appellant became surety on the injunction bond involved in this litigation. Therefore not only was the subject-matter of the suretyship on the North Carolina bonds different from that of the injunction bond declared upon, so that the execution of the injunction bond did not come within the conditional delivery of the indemnity proposal, but as to the time of the execution of the instruments, respectively, same did not form a part of the one and same transaction. Therefore the testimony admitted over the objection of appellant did not conflict with or vary the terms of said indemnity proposal, as the evidence was not in reference to the contents of said instrument, but to the limitation or condition attached to the operation of same made known before and at the time of the delivery of that instrument, which prevented the terms of same from becoming effective between the parties for any other purpose than that of suretyship on the part of appellant on the bonds to be executed by the stock salesman of said oil company in the state of North Carolina. Therefore said evidence did not in any respect tend to vary or contradict the terms of said instrument as applied to the conditions under which same was delivered, as said instrument could not take effect for any other purpose than that for which it was conditionally delivered. Hence we overrule appellant's objection to the introduction of said testimony. Burke v. Dulaney, 153 U. S. 228, 14 S. Ct. 816, 38 L. Ed. 698, and authorities therein cited in support of the rule of law here applied.

■ Although this cause was submitted upon special issues, the court failed to submit as an issue the delivery of said indemnity proposal—whether conditional, and, if so, the condition of its delivery—and such submission was not requested in writing by either appellant or appellee. Therefore, under article 2190, R. C. S. 1925, which in part provides that, "upon appeal or writ of error, an issue not submitted and not requested is deemed as found by the court in such manner as to support the judgment if there is evidence to sustain such finding," it is the duty of this court, under the state of the record, to assume that the trial court found, in accordance with the uncontradicted testimony in support of its judgment, that the delivery of said indemnity proposal was conditional, in that, the suretyship therein referred to was limited to bonds to be executed by certain stock salesmen representing the oil company in the sale of its stock in the state of North Carolina, and that the suretyship therein referred to did not under such conditional delivery apply or extend to appellant becoming surety on the injunction bond, so as to make appellee liable to it as an indemnitor.

■ Assuming that the indemnity proposal within and by its own terms created a contract as contended by appellant between it, the oil company, and appellee, the conditional delivery of said instrument, as established by the undisputed evidence, would prevent same from applying to or relating in any respect to the loss sustained by appellant on account of its suretyship upon said injunction bond. Therefore appellant's major propositions, viz.:

"No. 4: In no event was it necessary for plaintiff to notify defendant that it was looking to him under the indemnity contract on the injunction bond in question, because the jury found that J. E. Whitehead knew that plaintiff was looking to him under the indemnity contract of June 24, 1920, on the injunction bond in question, and because J. E.

Whitehead personally delivered the indemnity contract of June 24, 1920, and signed the injunction bond for the Osage Oil & Refining Company and knew that said bond was executed by plaintiff; and because of such facts, the finding of the jury, in response to Special Issue No. 3 that plaintiff did not notify defendant that it looked to him under said indemnity contract on the bond in question, became and was wholly immaterial and judgment should have been rendered for plaintiff against the defendant upon the verdict.

"No. 5: Since the contract of June 24, 1920, was an absolute and unconditional contract and promise by which the defendant bound himself primarily and as a principal, jointly and severally, with the Osage Oil & Refining Company to indemnify plaintiff against any loss which it might incur upon any obligation of suretyship which either of the defendants should require plaintiff to execute, and since no notice of the making of the injunction bond, or of any obligation of suretyship which the American Surety Company of New York might execute, to the defendant, Whitehead, was necessary, it was error for the Court to sustain the defendant J. E. Whitehead's special exception No. 5, in so far as same was directed to the absence of the allegation of notice of knowledge to J. E. Whitehead of the execution of the injunction bond of July 9, 1920."

"No. 10: Since the contract of June 24, 1920, was an absolute and unconditional contract and promise by which the defendant bound himself primarily, as principal, jointly and severally with the Osage Oil & Refining Company to indemnify the plaintiff against any loss which it might incur upon any obligation of suretyship which either of the defendants might require plaintiff to execute, no notice of the making of the injunction bond or any obligation of suretyship which the American Surety Company of New York might execute and no notice that plaintiff was looking to the defendant on account of any such obligation of suretyship, was necessary to be given to defendant Whitehead, and it was error for the Court to submit the question of notice to the jury over the seasonable objection and exception of plaintiff"
—if sustained, would not operate to disturb the judgment rendered in favor of appellant as the effect of the conditional delivery would not thereby be removed, or support a holding that same never became effective. This adjudication is in harmony with Burke v. Dulaney, supra, in which it is held (quoting from syllabi, which are supported by the opinion):

"3. Evidence which does not contradict the terms of the writing in suit, nor vary their legal import, but tends to show that the written instrument was never in fact delivered as a present contract is not in contradiction of the writing and is admissible between the original parties thereto.

"4. The rule that excludes parol evidence in contradiction of a written agreement has no application if the writing was not delivered as a present contract.

"5. The effect of the delivery and the extent of the operation of the instrument, such as a promissory note, may be limited, as between the original parties thereto, by the conditions with which delivery is made."

All propositions not discussed have been carefully considered and due effect given to same in the disposition made of this appeal, in that all center upon the legal effect of the indemnity proposal, upon which appellant's cause of action was predicated; and, no reversible error being revealed, all propositions are overruled and the judgment of the trial court is affirmed.

Affirmed.

## On Appellant's Motion for Rehearing.

Appellant's motion for rehearing revealed that, through a confusion of numbers of the special issues submitted, we were made to say in our original opinion that this court adopted the answers of the jury to special issues Nos. 1, 4, and 5 contained in the court's charge, and No. 2 requested by appellee, when as a matter of fact the court adopted the answers of the jury to special issues Nos. 2, 3, and 5 contained in the court's charge, and No. 2 requested by appellee, as findings of fact by this court, in addition to the other findings of fact made from uncontroverted evidence. This clerical error we have corrected in the original opinion so as to show the true findings of fact made by the court, as above stated. Said motion for rehearing is in all other respects overruled.

Overruled.